IN THE DISTRICT COURT IN AND FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:10-cv-01979-JDW-TBM

JAMES WOOD, JR,

      Plaintiff,

v.

GC SERVICES, LP,

      Defendant.

_____/

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff, JAMES WOOD, JR. ("Plaintiff"), by and through his attorneys, Weisberg & Meyers, LLC, hereby submits his Motion for Partial Summary Judgment against Defendant, GC SERVICES, LP ("Defendant"). In support thereof, Plaintiff respectfully states as follows:

## I.  INTRODUCTION.

In an effort to collect from Plaintiff an obligation alleged due its third party client, Defendant delivered no less than five voice messages to Plaintiff that violated the federal Fair Debt Collection Practices Act ("FDCPA"). In particular, Defendant delivered voice messages to Plaintiff that violated the FDCPA at section 1692d(6) by failing to meaningfully disclose the caller's identity, and that violated the FDCPA at section 1692e(11) by failing to disclose that the communications were from a debt collector. Additionally, Defendant violated the federal Telephone Consumer Protection Act ("TCPA") by using an artificial or prerecorded voice to deliver a voice message to Plaintiff's cellular telephone number.

1

## II.    STATEMENT OF FACTS.

### A.    Defendant Is A Debt Collector.

1.    Defendant "is the largest private collection agency in North America." www.gcserv.com.

2.    Defendant "is a debt collection agency," whose "principle business . . . is to collect debts for third parties."  Trial Transcript, Examination of Paul Grover,[1] *Guajardo v. GC Services, LP*, No. H-08-cv-119 (S.D. Tex.), p.103, lines 11-16, attached hereto as Exhibit "A."

3.    Defendant operates thirty-six debt collection offices.  Deposition Transcript, Paul Grover, *Guajardo v. GC Services, LP*, No. H-08-cv-119 (S.D. Tex.), p.21, lines 6-8, attached hereto as Exhibit "B."

4.    Defendant manages over 8.5 million open third party debt collection accounts. Exhibit "B," p.36, lines 12-22.

5.    In collecting debts for third parties, Defendant places telephone calls, and mails debt collection letters, to alleged consumer debtors.  Exhibit "B" at p.103, lines 17-19.

6.    Defendant's debt collectors place 100 to 500 telephone calls per day in connection with its Defendant's debt collection efforts.  Exhibit "B," p.70, lines 5-6.

### B.    Defendant Placed Repeated Telephone Calls To Plaintiff.

7.    Defendant concedes that it placed telephone calls to Plaintiff on June 21, 2010, June 23, 2010, June 29, 2010, and June 30, 2010.  Defendant's Supplemental Response to Plaintiff's Interrogatories, No. 5, attached hereto as Exhibit "C."

8.    Defendant's "Call Detail Search" shows that Defendant placed telephone calls to Plaintiff's cellular telephone number,[2] at 3:15 pm on June 21, 2010, at 4:29 pm on June 23,

---

[1] Defendant designated Paul Grover as its corporate representative in this matter.

2010, at 2:03 pm on June 29, 2010, at 10:45 am on June 30, 2010, at 4:48 pm on June 30, 2010, and at 2:48 pm on June 19, 2010.  Defendant's Call Detail Search, attached hereto as Exhibit "D."[3]

9.      Defendant concedes that that the telephone calls that it placed to Plaintiff "could have come from any of the following numbers: 866-477-8608, 800-357-7501, 800-559-3557, 800-565-2310, 800-642-2401, 800-663-4492, 800-946-9524, 866-452-3413, 877-246-1015, 877-246-1016, 877-246-1037, 877-700-9345, 877-932-1862, 888-346-4357, 888-932-3005, 888-932-3011, 800-565-2310, 866-620-2593, 877-538-077, or 888-257-9577.  Exhibit "C," No. 11.

10.     At no point did Defendant attempt to contact Plaintiff at a telephone number other than 727-236-1345, Affidavit of James Wood Jr., ¶14, attached hereto as Exhibit "E," which is his cellular telephone number.  Deposition Transcript, James Wood Jr., p.8, lines 20-21, attached hereto as Exhibit "F."

11.     Plaintiff does not have a residential telephone number, as he does not have a telephone land line – and has not had one for nearly two years.  Exhibit "F," p.7, lines 21-25; p.8, lines 1-14.

**C.      Defendant Left No Less Than Five Voice Messages For Plaintiff.**

12.     On June 15, 2011, Defendant initiated a telephone call to Plaintiff's cellular telephone number (727-236-1345), and using an artificial or prerecorded voice delivered the following message:

---

[2] Plaintiff's cellular telephone number is 727-236-1345.  Exhibit "E," ¶13; Exhibit "F, p.8, lines 20-23.

[3] Pursuant to this Court Order granting Defendant's Unopposed Motion for Protective Order, Document 17, Exhibit "D" is to be filed under seal – notwithstanding that the substance of the exhibit is openly acknowledged by Defendant – and is submitted as an attachment to Plaintiff's Motion to Seal Pursuant to this Court Order granting Defendant's Unopposed Motion for Protective Order.

Please call me at 1-800-605-5768[4] between the hours of 8 AM and 9 PM Monday through Thursday, 8 AM and 7 PM Friday, and 8 AM and 12 PM PST

Exhibit "E," ¶3.[5]

13.     On June 21, 2010, Defendant initiated a telephone call to Plaintiff's cellular telephone number (727-236-1345), and delivered the following message:

Hello this message is for James Wood Jr.  My name is Ellen. Please, return my call at 1-866-477-8608 as soon as possible, thank you.

Exhibit E,"¶5.

14.     On June 23, 2010, Defendant initiated a telephone call to Plaintiff's cellular telephone number (727-236-1345), and delivered the following message:

This message is for James Wood.  Please return my call at 1-866-477-8608.

Exhibit E,"¶6.

15.     On June 29, 2010, Defendant initiated a telephone call to Plaintiff's cellular telephone number (727-236-1345), and delivered the following message:

Hello, this message is for James Wood Jr.  My name is Katherine. Please, return my call at 1-866-477-8608.  Thank you, have a great day.

Exhibit E,"¶7.

16.     On June 30, 2010, Defendant initiated a telephone call to Plaintiff's cellular telephone number (727-236-1345), and delivered the following message:

---

[4] The telephone number included in GC Services, LP's June 15, 2010 voice message (1-800-605-5768) connects to GC Services, LP.  Exhibit "E," ¶4.

[5] Plaintiff filed on September 29, 2011, his motion for leave to submit the electronic recordings of the voice messages referenced herein via compact disk ("CD"), in connection with his motion for partial summary judgment.

> Hello, this message is for James Wood Jr.  My name is Sherry.
> Please return my call as soon as possible at 1-866-477-8608, thank
> you.

Exhibit E,"¶8.

17.    Plaintiff did not receive any communication from Defendant prior to the date on which Defendant first delivered a voice message to Plaintiff's cellular telephone number. Exhibit "F," p.51, lines 20-25 p. 52, lines 1-25; p.53, line 1; Exhibit "E," ¶13.

18.    Plaintiff never spoke with a live individual employed by, or acting on behalf of, Defendant.  Exhibit "F," p.43, lines 13-14.

19.    Plaintiff discovered Defendant's identity only after researching the telephone numbers from which Defendant placed telephone calls to Plaintiff's cellular telephone number. Exhibit "F," p.43, lines 15-25; p. 44, lines 1-25.

> **D.    Defendant's Internal Policy And Procedure Regarding Voice Messages Prohibits Its Debt Collectors From Meaningfully Disclosing The Caller's Identity, And From Disclosing That The Communication Is From A Debt Collector.**

20.    "The policy on answering machine messages is if you have not identified the debtor at that phone number, when you leave a message, you just leave a message stating your name and to return the call."  Exhibit "B," p.118, lines 15-18.

21.    Unless Defendant's employee "knows for a fact and have [sic] talked to that customer at that number or in the answering machine message it says you have reached Paul Grover and you're trying to get ahold of Paul Grover," he or she is prohibited from stating in a voicemail that he or she is a debt collector.  Exhibit "B," p.118, lines 22-25; p. 119, 1-7.

**E.     The Obligation That Defendant Sought To Collect From Plaintiff Was A Consumer Debt.**

22.     Defendant "admits" that it "contacted Plaintiff regarding the collection of the subject unpaid account balance."  Defendant's Responses to Plaintiff's Requests for Admissions, Nos. 2-3, attached hereto as Exhibit "H."

23.     Defendant concedes that its "best guess" as to the subject of the obligation that it sought to collect from Plaintiff is an amount due Wells Fargo.  Defendant's Supplemental Response to Plaintiff's First Set of Interrogatories, No. 12, attached hereto as Exhibit "G."

24.     Defendant similarly acknowledges, in response to Plaintiff's Motion to Compel, that its "best guess" as to the owner of the debt that it sought to collect from Plaintiff is Wells Fargo.  Document 18, p.8.

25.     The only obligation to Wells Fargo that Plaintiff incurred is that regarding a loan that he obtained for the purpose of purchasing an automobile for personal use.  Exhibit "E," ¶15.

26.     Plaintiff used the loan that he obtained from Wells Fargo to purchase the automobile that he now uses for personal purposes.  Exhibit "E," ¶16.

27.     Plaintiff is not obligated, nor was he obligated, to any creditor, regarding an obligation not incurred primarily for personal, family, or household purposes.  Exhibit "E," ¶17.

**F.     Defendant Utilized An Artificial Or Prerecorded Voice To Deliver A Voice Message To Plaintiff's Cellular Telephone Line.**

28.     Defendant utilizes an automatic telephone dialing system to place telephone calls to alleged consumer to debtors.  Exhibit "B," p.15, lines 6-25; p.16, lines 1-25; p, 17, lines 1-25; p.18, lines 1-16; p.72, lines 1-6.

29.     Defendant delivered its June 15, 2010 voice message to Plaintiff by using an artificial or prerecorded voice.  Exhibit "E," ¶3; Exhibit "F," p.29, lines 16-20; p. 47, lines 13-22.

### III.     THE FDCPA IMPOSES A STRICT LIABILITY STANDARD.

The FDCPA is a strict liability statute.  *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010); *see also Ferguson v. Credit Management Control, Inc.*, 140 F.Supp.2d 1293, 1297 (M.D. Fla. 2001).  Because the FDCPA is a strict liability statute, a single violation "is sufficient to subject a debt collector to liability under the Act."  *Drossin v. National Action Financial Services*, 641 F.Supp.2d 1314, 1317 (S.D. Fla. 2009); s*ee also Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 ("A single violation of any provision of the Act is sufficient to establish civil liability under the FDCPA.").  A consumer is not required to show an intentional violation of the FDCPA to be entitled to damages.  *Drossin*, 641 F.Supp.2d at 1317; *see also Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA).

### IV.     THE FDCPA MUST BE LIBERALLY CONSTRUED IN FAVOR OF CONSUMER-DEBTORS.

"The FDCPA is a remedial statute, and its provisions are to be liberally construed in favor of the consumer."  *Mammen v. Bronson & Migliaccio, LLP*, 715 F.Supp.2d 1210, 1213 (M.D. Fla. 2009).  "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C §1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer."  *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

### V.     THE FDCPA IS TO BE INTERPRETED IN ACCORDANCE WITH THE LEAST SOPHISTICATED CONSUMER STANDARD.

The FDCPA is to be interpreted in accordance with the least sophisticated consumer standard.  *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1177 (11th Cir. 1985).  The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naive and trusting, against deceptive debt collection practices, and protects debt

collectors against liability for bizarre or idiosyncratic interpretations of collection notices. *Clomon v. Jackson,* 988 F.2d 1314, 1318-19 (2d Cir.1993)

## VI.  PLAINTIFF IS A CONSUMER, DEFENDANT IS A DEBT COLLECTOR, AND THE SUBJECT OBLIGATION IS DEBT, AS DEFINED BY THE FDCPA.

### A.  Plaintiff Is A "Consumer" As Defined By The FDCPA.

"Consumer" is defined by the FDCPA as "any natural person obligated or alleged to be obligated to repay a debt." 15 U.S.C § 1692a(3). Defendant attempted to collect from Plaintiff a debt alleged due its third party client. *See supra*, Statement of Facts, ¶22; *see also generally* Defendant's Response to Plaintiff's Motion to Compel, Document 18.

### B.  Defendant Is A "Debt Collector" As Defined By The FDCPA.

"Debt collectors" are defined by the FDCPA as "any person who uses any instrumentality of interstate commerce in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C § 1692a(6). For reason that instrumentalities of interstate commerce include telephone and the mails, virtually all commercial collection activities fall within the realm of the FDCPA.

Defendant uses instrumentalities of interstate commerce in its business – the principal purpose of which is the collection of debts – and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. *See supra*, at Statement of Facts, ¶¶1-6. Defendant attempted to collect from Plaintiff a debt allegedly owed a third party creditor using instrumentalities of interstate commerce. *See supra*, Statement of Facts, ¶22.

### C.  Plaintiff's Alleged Obligation Is A "Debt" As Defined By The FDCPA.

"Debt" is defined by the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services

8

which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C § 1692a(5). Defendant attempted to collect from Plaintiff an obligation allegedly owed its third party client, Wells Fargo, which Plaintiff incurred for the purpose of purchasing an automobile for personal use. *See supra*, at Statement of Facts, ¶¶22-27.

**VII.   THE UNDISPUTED FACTS WARRANT JUDGMENT IN FAVOR OF PLAINTIFF ON HIS CLAIM UNDER 15 U.S.C. § 1692d(6).**

The FDCPA at section 1692d(6) provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> *       *       *
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(6).

**A.     A Debt Collector Fails To Meet The Standards Prescribed By The FDCPA At Section 1692d(6) Where The Caller Fails To State His Or Her Name And Capacity, Or Fails To Disclose Enough Information So As Not To Mislead The Recipient As To The Purpose Of The Call, Or Fails To Disclose That He Or She Is A Debt Collector And That The Purpose Of The Call Is To Collect A Debt.**

The FDCPA prohibits debt collectors from placing telephone calls "without meaningful disclosure of the caller's identity." *Dokumaci v. MAF Collection Services*, 8:09-CV-2488-T-24 TG, 2011 WL 833988 (M.D. Fla. Mar. 4, 2011). "Meaningful disclosure" requires that a debt collector placing a call state "the caller's name, the debt collection company's name, and the nature of the debt collector's business." *Id*. (citing *Sclafani v. BC Services, Inc.,* 2010 WL 4116471, at *2 (S.D. Fla. Oct.18, 2010); *Valencia v. Affiliated Group, Inc.,* 2008 WL 4372895, at *3 (S.D. Fla. Sept. 23, 2008)); *see also Baker v. Allstate Financial Services, Inc.,* 554

F.Supp.2d 945, 949-50 (D. Minn. 2008) (finding that a debt collector failed to meaningfully disclose its identity where it failed to disclose the nature of its business); *Costa v. National Action Financial Services,* 634 F. Supp. 2d 1069 (E.D. Cal. 2007) (defining "meaningful disclosure" as "requir[ing] that the caller [s]tate his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call."); *Hutton v. C.B. Accounts, Inc.*, 10-3052, 2010 WL 3021904, *3 (C.D. Ill. Aug. 3, 2010) ("Defendant cites no authority to support its argument that leaving an employee's first name and return telephone number are sufficient as a matter of law for meaningful disclosure under the FDCPA"); *Koby v. ARS Nat. Services, Inc.*, CIV. 09CV0780 JAHJMA, 2010 WL 1438763 (S.D. Cal. Mar. 29, 2010) *reconsideration denied*, 09CV0780 JAH JMA, 2010 WL 5249834 (S.D. Cal. Dec. 23, 2010) (holding that a debt collector fails to meet the standards prescribed by the FDCPA at section 1692d(6) where it fails "to disclose that the caller was a debt collector and that the purpose of the call was to collect a debt."); *Glover v. Client Services, Inc.*, 1:07-CV-81, 2007 WL 2902209, *5 (W.D. Mich. Oct. 2, 2007) ("[T]he individual telephoning the debtor must state his or her name an capacity.").

## B. The FDCPA At Section 1692d(6) Applies To Voice Messages.

"15 U.S.C. 1692d(6) applies 'equally to automated message calls and live calls.'" *Hosseinzadeh v. M.R.S. Associates, Inc.,* 387 F. Supp. 2d 1104, 1115 (C.D. Cal. 2005) (citing *Joseph v. J.J. Mac Intyre Cos.*, 238 F. Supp. 2d 1156, 1163 (N.D. Cal. 2002)); *see also Belin v. Litton Loan Servicing, LP*, 8:06CV760 T24EAJ, 2006 WL 1992410, *5 (M.D. Fla. July 14, 2006) (finding that voice messages left on answering machines are "communications" under the FDCPA, "because they conveyed information about a debt indirectly, since the purpose of the message is to get the debtor to return the call to discuss the debt."); *Beeders v. Gulf Coast*

*Collection Bureau*, 8:09-CV-00458-T-AEP, 2011 WL 2682984 (M.D. Fla. Jan. 12, 2011) *aff'd*

*sub nom. Beeders v. Gulf Coast Collection Bureau, Inc.*, 11-10560, 2011 WL 2555829 (11th Cir.

June 28, 2011) (finding that the FDCPA at section 1692d(6) applies to voice messages in the

same manner as live calls); *Holland v. Bureau of Collection Recovery*, 8:10-CV-2632-T-

26TGW, 2011 WL 3489111 (M.D. Fla. Aug. 2, 2011) (The plain language of the statute makes it

clear that meaningful disclosure must be made when "placing telephone calls" and not just in

communications.").

      **C.    Defendant Delivered No Less Than Five Voice Messages To Plaintiff That Failed To Provide Meaningful Disclosure Of The Caller's Identity.**

Defendant placed no less than five voice messages to Plaintiff's cellular telephone

number that failed to provide Plaintiff with meaningful disclosure of the caller's identity as

required by the FDCPA at section 1692d(6). *See supra*, Statement of Facts, ¶¶7-8, 12-16, 20-21.

**VIII.  THE UNDISPUTED FACTS WARRANT JUDGMENT IN FAVOR OF PLAINTIFF, AND AGAINST DEFENDANT, ON HIS CLAIM UNDER THE FDCPA AT SECTION 1692e(11).**

The FDCPA at section 1692e(11) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> \*   \*   \*
>
> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11).

**A.      The FDCPA At Section 1692e(11) Applies To Initial And Subsequent Communications.**

"Section 1692e(11) requires a debt collector 'to disclose in subsequent communications that the communication is from a debt collector.'" *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009).  "Section 1692e(11) requires that the collectors must "disclose clearly in **all** communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." *Sandlin v. Shapiro & Fishman*, 919 F. Supp. 1564, 1568 (M.D. Fla. 1996) (emphasis in original); *see also  Drossin v. Nat'l Action Financial Services, Inc*., 641 F. Supp. 2d 1314, 1319 (S.D. Fla. 2009) ("The provisions of the FDCPA are clear that in initial or subsequent communications, it must be disclosed that the communication is from a debt collector."); *Masciarelli v. Richard J. Boudreau & Associates, LLC*, 529 F. Supp. 2d 183, 186 (D. Mass. 2007) ("A collection agent must follow the disclosure requirement of identifying himself as a debt collector in all communications."); *Winberry v. United Collection Bureau, Inc*., 692 F. Supp. 2d 1279, 1292 (M.D. Ala. 2010) ("This court is persuaded that the plain language of the statute as it now reads, having been amended, requires a debt collector to identify in subsequent communications that he is a debt collector.").[6]

---

[6] Indeed, United States Circuit Courts of Appeals have uniformly rejected contentions that the disclosure requirements of section 1692e(11) do not apply to follow-up notices. *Pipiles v. Credit Bureau of Lockport*, 886 F. 2d 22, 26 (2d Cir. 1989) ("[W]e must now address the question left open in Emanuel and determine whether the Notice, a follow-up communication, was also required to comply.  We hold that it was, and therefore rule that Pipiles has established a violation of section 1692e(11)."); *Frey v. Gangwish*, 970 F. 2d 1516, 1520 (6th Cir. 1992) ("follow-up communications are subject to the disclosure requirements of section 1692e(11)"); *Carroll v. Wolpoff & Abramson*, 961 F. 2d 459, 461 (4th Cir. 1992), *cert. denied*, 113 S. Ct. 298 (1992) (holding that follow-up notices are subject to the disclosure requirements of section 1692e(11)); *Dutton v. Wolpoff & Abramson*, 5 F. 3d 649, 654 (3d Cir. 1993) (rejecting *Pressley* because it "changes the clear and unambiguous language 'all communications' and substitutes the more limited phrase 'some communications.'").

**B.     The FDCPA At Section 1692e(11) Applies To Voice Messages That Do Not Explicitly Demand Payment.**

Voice messages from debt collectors to debtors are "communications" regardless of whether a debt is mentioned in the message. *Hutton*, 2010 WL 3021904 at *2-3; *Belin,* 2006 WL 1992410 at *4 ("[M]essages left on answering machines that did not directly convey information about a debt were still communications under the FDCPA, because they conveyed information about a debt indirectly, since the purpose of the message is to get the debtor to return the call to discus the debt."); *Foti v. NCO Fin. Sys.,* 424 F. Supp. 2d 643, 655-56 (S.D.N.Y. 2006) (holding that a voice message is a "communication" under the FDCPA); *Hosseinzadeh*, 387 F. Supp. 2d at 1115-16 (citing FTC Staff Commentary on FDCPA, 53 Fed. Reg. 50103 (Dec. 13, 1988)) (rejecting contentions that "contacts that do not explicitly refer to the debt are not 'communications' and, hence, do not violate any provision where that term is not used").

Simply, a communication need not contain an explicit demand for payment to require the inclusion of disclosures as set forth by the FDCPA at section 1692e(11). *Gburek v. Litton Loan Servicing LP*, 614 F. 3d 380, 382 (7th Cir. 2010). Where a communication was sent or conveyed to induce payment of an alleged debt, the failure to include the disclosures necessitated by section 1692e(11) is a violation of the FDCPA. *Id*.

**C.     Defendant Delivered No Less Than Five Voice Messages To Plaintiff That Failed To Provide The Disclosures Required By The FDCPA At Section 1692e(11).**

Defendant delivered no less than five voice messages to Plaintiff that failed to provide the disclosures required by the FDCPA at section 1692e(11). *See supra*, Statement of Facts, ¶¶7-8, 12-16, 20-21.

## VIII.  THE UNDISPUTED FACTS WARRANT JUDGMENT IN FAVOR OF PLAINTIFF ON HIS CLAIM UNDER 47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> \*    \*        \*
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

### A.    Defendant Violated The TCPA By Using An Artificial Or Prerecorded Voice To Deliver A Voice Message To Plaintiff's Cellular Telephone Line.

In addition to prohibiting a caller from using any automatic telephone dialing system to call a telephone number associated with a cellular service,[7] the TCPA prohibits a caller from using an artificial or prerecorded voice to call a telephone number associated with a cellular service.  47 U.S.C. § 227(b)(1)(A)(iii); *see also Moore v. Firstsource Advantage, LLC*, 07-CV-

---

[7] The TCPA prohibits a caller from using any automatic telephone dialing system to call a telephone number associated with a cellular service.  The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1.  "[A] system need not actually store, produce or call randomly or sequentially generated telephone numbers, it only need to have the capacity to do it."  *Satterfield v. Simon & Schuster, Inc.*, 569 F. 3d 946, 951 (9th Cir. 2009).  The definition of "automatic telephone dialing system" is broad enough to include any equipment that dials numbers automatically, either by producing ten-digit telephone numbers arbitrarily or generating them from a database of existing telephone numbers.  *See Griffith v. Consumer Portfolio Serv., Inc.,* 10 C 2697, 2011 WL 3609012 (N.D. Ill. Aug. 16, 2011) (finding that predictive dialers – "dialers that call lists of known telephone numbers" – fall under the definition of an "automatic telephone dialing system).

770, 2011 WL 4345703, *10 (W.D.N.Y. Sept. 15, 2011) ("Further, even if it never used an

ATDS, Defendant also could be liable under the TCPA for placing calls to Plaintiff's cell number

using an artificial or prerecorded voice.").

On June 15, 2010, Defendant, initiated a telephone call to Plaintiff's cellular telephone

number, and delivered a voice message by using an artificial or prerecorded voice.[8]  *See supra*,

Statement of Facts, ¶12.

### B. Defendant Did Not Initiate Any Telephone Calls To Plaintiff's Cellular Telephone Number For Emergency Purposes.

The exemption applicable to calls made for an emergency purpose is an affirmative

defense to liability under the TCPA at section 227(b)(1)(A)(iii);  *See generally CE Design, Ltd.*

*v. Prism Business Media, Inc.*, 606 F. 3d 443, 448 (7th Cir. 2010); *Green v. Service Master On*

*Location Services Corp.*, 2009 WL 1810769, * 2, n.2 (N.D. Ill. 2009).  Stated otherwise, the

exemption applicable to calls made for an emergency purpose constitute "an avoidance or

affirmative defense" – as described by Rule 8(c) – characterized as one that admits the

allegations of the complaint but suggests some other reason why there is no right of recovery.

Defendant has not pleaded an affirmative defense to Plaintiff's claims under the TCPA

sounding in "calls made for an emergency purpose."  Defendant's Answer and Affirmative

---

[8] The TCPA states it "shall be unlawful for any person . . . **to make any call** . . . using any automatic telephone dialing system or an artificial or prerecorded voice. . . ." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  "It is the act of making a call, that is, of attempting to communicate to a cellular telephone number using certain equipment, that the TCPA prohibits. Whether the call had the potential for a two-way real time voice communication is irrelevant." *Joffe v. Acacia Mortg. Corp.*, 121 P. 3d 831 (Ct. App. Div. 1 2005), *review denied*, (May 23, 2006), *cert. denied*, 127 S. Ct. 934 (2007).  "As other courts have recognized, however, limiting the definition of the word 'call' to oral communications by phone does not comport with the remainder of § 227.  Rather than prohibiting calls to a telephone, § 227(b)(1)(A)(iii) prohibits a person from making a 'call' 'to any telephone *number* assigned to a paging service, cellular telephone service specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.'" *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1004-1005 (N.D. Ill. 2010) (emphasis in original).

Defenses, Document 9.  Moreover, Defendant has not produced any evidence that any of the calls that it placed to Plaintiff's cellular telephone line were calls made for an emergency purpose.

      **C.**    **Plaintiff Did Not Give To Defendant Prior Express Consent To Deliver Voice Messages To His Cellular Telephone Number By Using And Artificial Or Prerecorded Device.**

Express consent is "[c]onsent that is clearly and unmistakably stated."  *Satterfield v. Simon & Schuster, Inc.*, 569 F. 3d at 955 (citing Black's Law Dictionary 323 (8th ed.2004)). Similar to the exemption applicable to calls made for an emergency purpose, the exemption for prior express consent is an affirmative defense to liability under the TCPA at section 227(b)(1)(A)(iii):

> The defendant bears the burden of proof with respect to "prior express consent." *U.S. v. First City Nat. Bank of Houston,* 386 U.S. 361, 366, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967) (where one claims the benefit of an exception to the prohibition of a statute, that party carries the burden of proof); *see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling,* FCC 07-232, CG Docket No. 02-278 (Dec. 28, 2007) ("To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications.")

*Sengenberger v. Credit Control Services, Inc.*, 09C2796, 2010 WL 1791270 (N.D. Ill. May 5, 2010) *adhered to on reconsideration*, 09 C 2796, 2010 WL 6373008 (N.D. Ill. June 17, 2010)

Defendant has not pleaded an affirmative defense to Plaintiff's claims under the TCPA sounding in "prior express consent."  Defendant's Answer and Affirmative Defenses, Document 9.  Moreover, Defendant has not produced any evidence that it obtained Plaintiff's prior express

consent to deliver voice messages to his cellular telephone number by using and artificial or prerecorded device.

> D.    **The Established Business Relationship Exemption Does Not Apply To Telephone Calls Placed To A Party's Cellular Telephone Line (As Opposed To Telephone Calls Placed To A Party's Residential Telephone Line).**

Defenses to a claim under the TCPA, sounding in the established business relationship exemption, do not apply to telephone calls placed to a party's cellular telephone line:

> The Eleventh Circuit has noted that the Federal Communications Commission ("FCC") exempts from the TCPA's statutory prohibition in 47 U.S.C. § 227(b)(1)(B) "any call 'made to any person with whom the caller has an established business relationship at the time the call is made[.]' " *Meadows v. Franklin Collection Serv., Inc.,* Case No. 10-13474, 2011 WL 479997, at *4 (11th Cir. Feb.11, 2011) (quoting 47 C.F.R. 64 1200(a)(2)(iv)). "The FCC has also clarified that 'all debt collection circumstances involve a prior or existing business relationship.' " *Id.,* (internal citations omitted). As explained above, Plaintiff clearly had an established business relationship with Defendants-borrower and loan servicers-at the time the calls were commenced in 2010, [DE-22, ¶¶ 12, 15, 20, 22; 22-1]; *see also Sardinas v. Geithner,* 2:10-CVB-501JCM, 2010 WL 2696626, at *3 (D.Nev. July 6, 2010) (dismissing TCPA claim based upon existence of established business relationship with the consumer). As such, to the extent Plaintiff attempts to assert a claim against Defendants under 47 U.S.C. § 227(b)(1)(B) in count III, such a claim is dismissed with prejudice based upon the FCC's exemption for established business relationships.
>
> In comparison, Defendants have cited to no authority demonstrating that the exemption of section 227(b)(1)(B) for an established business relationship likewise applies to claims brought under section 227(b)(1)(A). In the absence of such authority, and when considering that the exemption appears to only qualify the language of section 227(b)(1)(B), the Court is not persuaded at this time that the exemption similarly applies to section 227(b)(1)(A).

*Bentley v. Bank of America, N.A.*, 773 F.Supp.2d 1367, 1374-75 (S.D. Fla. 2011).

**E.   Defendant Acted Willfully And Knowingly In Placing Telephone Calls To Plaintiff's Cellular Telephone Number By Way Of An Automatic Telephone Dialing System.**

Treble damages are proper under the TCPA – three times the statutory minimum damage award of $500.00 **per violation** – where the defendant's actions were committed "willfully or knowingly." 47 U.S.C. § 227(b)(3). Although neither the TCPA nor Federal Communications Commission regulations define the terms "willfully or knowingly," courts have generally interpreted willfulness to imply only that an action itself was intentional. *Smith v. Wade,* 461 U.S. 30, 41 n. 8 (1983). The Communications Act of 1943, of which the TCPA is a part, defines willful as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[ ], rule or regulation." *Sengenberger*, 2010 WL 1791270 at *6; *see also Dubsky v. Advanced Cellular Communications, Inc.,* 2004 WL 503757, *2 (Ohio Com. Pl. 2004) (in the context of the TCPA, the term acting "willfully" means that "the defendant acted voluntarily, and under its own free will, regardless of whether the defendant knew that it was acting in violation of the statute).

**IX.   CONCLUSION.**

WHEREFORE, Plaintiff respectfully requests that this Court grant Plaintiff's motion for partial summary judgment as to his claims under the FDCPA at sections 1692d(6) and 1692d(11), and as to his claims under the TCPA at section 227(b)(1)(A)(iii).

Respectfully submitted,
**JAMS WOODS JR.**


By: s/ Alex Weisberg
ALEX D. WEISBERG
FBN: 0566551
WEISBERG & MEYERS, LLC
ATTORNEYS FOR PLAINTIFF
5722 S. Flamingo Road, Ste. 656
Cooper City, FL 33330
(954) 212-2184
(866) 577-0963 fax
aweisberg@attorneysforconsumers.com


I HEREBY CERTIFY THAT Plaintiff's Motion for Partial Summary Judgment was filed

on this 29th day of September 2011, by means of the CM/ECF system which will send notice of

electronic filing to the following: Mr. Robert E. Sickles at rsickles@hinshawlaw.com


By: s/ Alex Weisberg
ALEX D. WEISBERG
FBN: 0566551
WEISBERG & MEYERS, LLC
ATTORNEYS FOR PLAINTIFF
5722 S. Flamingo Road, Ste. 656
Cooper City, FL 33330
(954) 212-2184
(866) 577-0963 fax
aweisberg@attorneysforconsumers.com