1        **UNITED STATES DISTRICT COURT**
          **MIDDLE DISTRICT OF FLORIDA**
2              **TAMPA DIVISION**

3    MARC ELLIOT

4              PLAINTIFF

5        VS.              CASE NO. 8:10-CV-1976-T-24TBM
                          MAY 24, 2011
6                         TAMPA, FLORIDA
                          2:03 P.M. - 3:02 P.M.
7

     GC SERVICES, LP,
8
               DEFENDANT.
9    _____/

10

     JAMES WOOD, JR.,
11
               PLAINTIFF
12
         VS.              CASE NO. 8:10-CV-1979-T-27TBM
13                        MAY 24, 2011
                          TAMPA, FLORIDA
14                        2:03 P.M. - 3:02 P.M.

15   GC SERVICES, LP,

16             DEFENDANT.
     _____/
17

18
              TRANSCRIPT OF MOTION HEARING
19                  (DOCUMENT 27)
          BEFORE THE HONORABLE THOMAS B. MCCOUN, III
20            UNITED STATES MAGISTRATE JUDGE

21

22

23   PROCEEDINGS REPORTED AND TRANSCRIBED BY
     OFFICIAL COURT REPORTER USING COMPUTER-AIDED
24   TRANSCRIPTION.

25

```
 1   A P P E A R A N C E S:

 2   ALEX D. WEISBERG, ESQUIRE
     WEISBERG & MEYERS, LLC
 3   SUITE 656
     5722 S FLAMINGO RD
 4   COOPER CITY, FL 33330
     888/595-9111
 5   FAX: 866/577-0963
     EMAIL: AWEISBERG@ATTORNEYSFORCONSUMERS.COM
 6   APPEARING TELEPHONICALLY ON BEHALF OF THE PLAINTIFFS.

 7   CARLOS A. ORTIZ, ESQUIRE
     HINSHAW & CULBERTSON, LLP
 8   SUITE 300
     222 N LASALLE ST
 9   CHICAGO, IL 60601-1081
     312-704-3000
10   FAX: 312-704-3001
     EMAIL: CORTIZ@HINSHAWLAW.COM
11   APPEARING TELEPHONICALLY ON BEHALF OF THE DEFENDANT.

12   ROBERT E. SICKLES, ESQUIRE
     HINSHAW & CULBERTSON, LLP
13   100 S ASHLEY DR., SUITE 500
     TAMPA, FL 33602
14   813-868-8838
     FAX: 813-276-1956
15   EMAIL: RSICKLES@HINSHAWLAW.COM
     APPEARING ON BEHALF OF THE DEFENDANT.

16

17

18

19

20

21

22

23

24

25
```

1                           **I N D E X**

2    ARGUMENT BY MR. ORTIZ                                5

3    ARGUMENT BY MR. WEISBERG                             8

4    RULING BY THE COURT                                  50

5    CERTIFICATE OF COURT REPORTER                        51

6

7                    * * * * * * * * * *

8

9                       **E X H I B I T S**

10

11                 *(NONE RECEIVED IN EVIDENCE)*

12                * * * * * * * * * * *

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

1
2  (COURT CALLED TO ORDER.)

3          THE COURT:  WE ARE RECORDING THE PROCEEDINGS

4  ELECTRONICALLY.  IF YOU ALL SPEAK INTO THE PHONE CLEARLY,

5  WE'LL BE ABLE TO HEAR YOU ON THIS END AND IF YOU WILL --

6  COUNSEL, IF YOU WILL PULL UP THE MICROPHONE THERE AND SPEAK

7  INTO THAT, WE'LL MAKE A GOOD RECORD ON YOUR END AS WELL.

8          WHO IS HERE FOR PLAINTIFF?

9          MR. WEISBERG:  ALEX WEISBERG ON BEHALF OF THE

10 PLAINTIFFS, YOUR HONOR.

11          THE COURT:  GOOD MORNING.  WHO IS HERE FOR GC

12 SERVICES?

13          MR. ORTIZ:  GOOD AFTERNOON, YOUR HONOR.  APPEARING

14 BY PHONE IS CARLOS ORTIZ.

15          MR. SICKLES:  AND ROB SICKLES IS PRESENT IN THE

16 COURTROOM.

17          THE COURT:  OKAY.  GOOD.  ALL RIGHT.  WE'VE

18 CALENDARED THE MATTER FOR A HEARING, FRANKLY, BECAUSE IT'S

19 IMPOSSIBLE TO KNOW FROM THE PLEADINGS WHERE WE ARE WITH THE

20 INTERROGATORIES.

21          THE DEFENDANT'S RESPONSE SUGGESTS THAT SUPPLEMENTS

22 HAVE BEEN MADE OR WERE TO BE MADE AND IT'S IMPOSSIBLE TO

23 KNOW, FRANKLY, HOW SATISFACTORY THEY WERE.

24          SO, WHILE I'M FAMILIAR WITH THE PARTICULARS OF

25 EACH OF THE INTERROGATORIES, I'M NOT FAMILIAR WITH -- AT

```
 1   LEAST NOT FAMILIAR ENOUGH TO BE ABLE TO RULE WHERE WE ARE ON
 2   ANY OUTSTANDING MATTERS, SO LET ME START WITH YOU,
 3   MR. WEISBERG.
 4           MR. WEISBERG:  YES, YOUR HONOR.  THE DEFENDANT DID
 5   PROVIDE SUPPLEMENTATION TO A FEW INTERROGATORIES AND I ALSO
 6   SPOKE TO MR. SICKLES ABOUT THIS LAST WEEK.
 7           AS FAR AS I'M CONCERNED, THE SUPPLEMENTATION
 8   REALLY ONLY TOOK CARE OF INTERROGATORY NUMBER FOUR IN EACH
 9   CASE.  THEY DID PROVIDE THE NAME OF THE COLLECTORS WHO WERE
10   RESPONSIBLE OR WHO WERE INVOLVED IN THE COLLECTION OF THE
11   DEBTS.
12           BUT, TO US, THE REMAINING INTERROGATORIES AND
13   REQUEST FOR PRODUCTIONS REMAIN OUTSTANDING.
14           THE COURT:  EVERY ONE OF THEM?
15           MR. WEISBERG:  YES, YOUR HONOR.  EVERY ONE THAT WE
16   HAVE LISTED IN OUR MOTION, YES.
17           THE COURT:  OKAY.  MR. ORTIZ OR MR. SICKLES, YOU
18   WANT TO CHIME IN HERE?
19           MR. ORTIZ:  YOUR HONOR, THIS IS CARLOS ORTIZ.
20   THANK YOU FOR ALLOWING ME TO APPEAR BY PHONE.
21           IT'S KIND OF DIFFICULT TO SPEAK IN GENERAL BECAUSE
22   I THINK THERE ARE SOME SPECIFIC ISSUES THAT DISTINGUISH ONE
23   CASE FROM ANOTHER.
24           I CAN TELL YOU THAT GENERALLY SPEAKING IN REGARDS
25   TO THE DOCUMENT REQUESTS, YOUR HONOR, WE'VE TURNED OVER IN
```

```
1    EACH CASE NEARLY 400 DOCUMENTS.  WE HAVE TURNED OVER

2    EVERYTHING IN GC SERVICES' POSSESSION ONCE THE PROTECTIVE

3    ORDER WAS IN PLACE.

4            SO, TO THE EXTENT THAT MY OPPONENT IS TAKING THE

5    POSITION THAT THEY REMAIN OUTSTANDING, THERE IS NOTHING MORE

6    FOR GC SERVICES TO BE ABLE TO PRODUCE.

7            THEY HAVE PRODUCED EVERYTHING THAT WAS IDENTIFIED

8    IN THEIR INITIAL DISCLOSURES IN BOTH CASES AND, AS A

9    CONSEQUENCE, THERE IS JUST SIMPLY NOTHING MORE TO PRODUCE.

10           THE COURT:  ONE OF THE THINGS YOU COMPLAIN ABOUT

11   IN YOUR RESPONSE -- AND, FRANKLY, IT'S NOT A DEFENSE TO YOUR

12   POSITION, BUT IT'S SOMETHING WORTH BRINGING UP, IS THE FACT

13   THAT THE PLAINTIFFS HAD NOT -- HAD NOT MADE THEIR INITIAL

14   DISCLOSURES.

15           HAS THAT OCCURRED?

16           MR. ORTIZ:  WELL, YOUR HONOR, HERE'S WHAT MY

17   UNDERSTANDING -- HERE'S WHAT MY UNDERSTANDING AS TO WHAT

18   HAPPENED:  THE QUICK ANSWER TO YOUR QUESTION IS YES, IN

19   PART, AND, NO, IN PART.

20           AND I'LL EXPLAIN THAT TO YOU RIGHT NOW, YOUR

21   HONOR.  APPARENTLY, MR. WEISBERG SENT VIA E-MAIL THE INITIAL

22   DISCLOSURES IN BOTH CASES AT SOME POINT, I BELIEVE, IN

23   DECEMBER OF LAST YEAR.

24           HE SENT THEM OVER TO MY PARTNER, MR. SICKLES.  MR.

25   SICKLES HAD NO RECORD OF RECEIVING THOSE -- THOSE
```

1    RESPONSE -- THOSE INITIAL DISCLOSURES.

2            AND THE FACT THAT THOSE INITIAL DISCLOSURES, WE

3    HAD NO RECEIPT OF THOSE, IS EXEMPLIFIED BY THE FACT THAT

4    WHEN WE HAD THE DISCOVERY CONFERENCE, THERE WAS A VOICE

5    MAIL, A RECORDING THAT MR. WEISBERG FOR THE FIRST TIME

6    IDENTIFIED AND WE -- I LET MR. WEISBERG KNOW THAT I HAD NO

7    RECORD, I HAD NO KNOWLEDGE OF ANY VOICE MAIL RECORDING

8    EXISTING.

9            WITH THAT SAID, THERE ARE, IN MY UNDERSTANDING

10   FROM READING THE INITIAL DISCLOSURES IN BOTH CASES -- AND I

11   THINK MR. SICKLES BROUGHT A COPY OF BOTH INITIAL DISCLOSURES

12   IN BOTH CASES FOR THE COURT SHOULD THE COURT WANT TO TAKE A

13   LOOK AT THEM.

14           APPARENTLY, THERE ARE RECORDINGS IN THE PLURAL.

15   ALL I HAVE RIGHT NOW IS ONE RECORDING IN THE WOOD CASE.  I

16   HAVE ACTUALLY NO PRODUCTION IN THE ELLIOT CASE.

17           AND, THEN, IN REGARDS TO THE -- TO THE COMPUTATION

18   OF DAMAGES, THAT'S ALSO INSUFFICIENT.  THERE'S -- YOU KNOW,

19   THERE'S JUST A -- SORT OF A GENERAL GENERIC SORT OF

20   STATEMENT SAYING THAT THERE'S ACTUAL DAMAGES OUT THERE, BUT

21   THERE'S NO COMPUTATION PROVIDED.

22           AND THERE IS CASE LAW IN THE MIDDLE DISTRICT OF

23   FLORIDA THAT SAYS, YOU KNOW, THAT PARTIES NEED TO AT LEAST

24   MAKE AN EFFORT TO BE ABLE TO IDENTIFY WHAT THEIR ACTUAL

25   DAMAGES ARE.

```
1          AND WITHOUT THAT -- YOU KNOW, WE'VE BEEN MAKING AN

2   ATTEMPT TO BE ABLE TO RESOLVE BOTH OF THESE CASES AND THAT'S

3   CERTAINLY BEEN AN INHIBITOR BECAUSE WE DON'T HAVE ANY

4   INDICATION FROM OUR OPPONENT WHAT HIS CLAIMED ACTUAL DAMAGES

5   ARE.

6          THE COURT:  ALL RIGHT.  MR. WEISBERG, LET'S START

7   WITH THE INITIAL DISCLOSURES, BECAUSE CLEARLY BY NOW THOSE

8   SHOULD HAVE BEEN MADE.

9          MR. WEISBERG:  YES.

10         THE COURT:  WHAT'S YOUR POSITION WITH REGARDS TO

11  WHAT YOU'VE DONE THERE?

12         MR. WEISBERG:  OH, THEY WERE MADE, YOUR HONOR.

13  THEY WERE MADE, AS MR. ORTIZ SAID, BACK IN OCTOBER.  THEY

14  WERE SENT TO MR. SICKLES AND I HAVE SENT PROOF TO BOTH OF

15  THEM RECENTLY THAT THEY WERE, IN FACT, MADE.

16         SO, I DON'T THINK THERE IS ANY DISPUTE ABOUT THAT.

17         THE COURT:  DAMAGES AS WELL?

18         MR. WEISBERG:  WELL, I MEAN, MR. ORTIZ STARTS

19  TALKING ABOUT PRODUCTION.  THERE HASN'T BEEN ANY

20  INTERROGATORIES OR REQUESTS FOR PRODUCTION SERVED ON MY

21  CLIENTS.

22         WE GAVE A GENERAL EXPLANATION IN THE INITIAL

23  DISCLOSURES AND THIS IS THE FIRST TIME THAT I'M HEARING,

24  YOUR HONOR, THAT THOSE WERE INSUFFICIENT.

25         THE COURT:  OKAY.  WE'LL COME BACK TO THAT IN A
```

```
 1   MOMENT.

 2           LET'S GO AHEAD AND FLIP OVER TO THE

 3   INTERROGATORIES.  IF WE'RE GOING TO HAVE TO GO THROUGH

 4   THESE, LET'S BEGIN.

 5           IN INTERROGATORY NUMBER FIVE, THE -- THE REQUEST

 6   IS TO IDENTIFY DATE, TIME AND WITNESSES WHO PARTICIPATED IN

 7   THE COMMUNICATIONS THAT ARE IN DISPUTE HERE.

 8           WHICH I WOULD TAKE IT, PARTLY, HAS BEEN ANSWERED

 9   BY THEIR COMPLETE RESPONSE TO NUMBER FOUR, ALTHOUGH THERE

10   ARE A NUMBER OF SUBPARTS HERE THAT YOU ASKED FOR SPECIFIC

11   INFORMATION ABOUT.

12           IN THE -- IN THE ANSWER, THE DEFENDANT SAYS, YOU

13   KNOW, SUBJECT TO THEIR OBJECTIONS AND WITHOUT WAIVING THE

14   OBJECTIONS, SEE DETAILED ACCOUNT LISTING.

15           OKAY.  I HAVE NO CLUE WHAT THAT MEANS.  WHAT

16   REMAINS IN DISPUTE ON INTERROGATORY FIVE?

17           MR. WEISBERG:  WELL, YOUR HONOR, IF I'M NOT

18   MISTAKEN, I THINK WE DID RECEIVE SOME ACCOUNT NOTES ON THE

19   ELLIOT CASE.  I DON'T BELIEVE WE RECEIVED THEM ON THE WOOD

20   CASE.

21           BUT WHAT THEY ARE, PRESUMABLY, THE DEFENDANT'S

22   COLLECTION NOTES REFLECTING THE COLLECTION ATTEMPTS IN THE

23   CASE.

24           THE PROBLEM IS THAT THEY, OF COURSE, CONTAIN A LOT

25   OF ABBREVIATIONS AND THINGS THAT WE'RE JUST NOT ABLE TO
```

1   DECIPHER.  THAT'S WHY WE'VE ASKED FOR SOME MORE SPECIFIC

2   INFORMATION.

3          THE COURT:  WELL --

4          MR. WEISBERG:  BUT I DON'T THINK I RECEIVED IT ON

5   THE WOOD CASE, JUST THE ELLIOT CASE.

6          THE COURT:  WHAT IS -- IT WOULD SEEM TO ME THAT AS

7   A STARTING POINT, THE NAME OF THE INDIVIDUAL WHO

8   PARTICIPATED IN A COMMUNICATION IS CERTAINLY FAIR GAME.

9          THE -- AND ANY NOTES MADE IN CONNECTION -- I DON'T

10  KNOW IF YOU ALL KEEP LOGS, DIFFERENT COMPANIES DO THIS

11  DIFFERENT WAYS, BUT ANY NOTES MADE IN CONNECTION WITH EACH

12  OF THE CONTACTS.

13         IT SEEMS TO ME THIS STUFF SHOULD HAVE BEEN GIVEN

14  UP ALREADY.  HAS IT BEEN?

15         MR. ORTIZ:  YOUR HONOR, THIS IS, AGAIN, MR. ORTIZ.

16         YES, IT HAS.

17         MR. WEISBERG:  IT HAS IN ELLIOT, YOUR HONOR.  I

18  HAVE NOT RECEIVED THE COLLECTION NOTES ON THE WOOD CASE.

19         THE COURT:  NO, I'M TALKING -- HOW ABOUT THE NAMES

20  OF THE PERSONS THAT INITIATED THE CALL?  I MEAN, THAT'S WHAT

21  THE INTERROGATORY CALLS FOR.

22         MR. WEISBERG:  YEAH, THAT ONE, LIKE I SAID, YOUR

23  HONOR, I THINK THEY DID TAKE CARE OF THAT IN INTERROGATORY

24  NUMBER FOUR, WHEN THEY SUPPLEMENTED INTERROGATORY NUMBER

25  FOUR, THE NAMES.

1          MR. ORTIZ:  YOUR HONOR, IF I MAY -- AND, AGAIN,

2    THIS IS WHERE IT'S IMPORTANT TO DRAW DISTINCTION BETWEEN THE

3    TWO CASES.

4          ALL RIGHT.  IN ELLIOT, AS I BELIEVE MY OPPONENT

5    HAS ALREADY REPRESENTED TO THE COURT, THERE HAS BEEN A

6    PRODUCTION OF THE NAMES OF THE INDIVIDUALS WHO WERE

7    INVOLVED -- NOT ONLY THOSE INDIVIDUALS WHO SPOKE WITH

8    MR. ELLIOT, BUT ANY INDIVIDUAL WHO ESSENTIALLY HAD TOUCHED,

9    SO TO SPEAK, THE FILE.

10          SO, I THINK THAT WE WENT ABOVE AND BEYOND WHAT WAS

11    BEING REQUESTED IN THE INTERROGATORY.

12          AND THE NOTES THEMSELVES -- AND, AGAIN, THIS IS

13    ELLIOT, CLEARLY IDENTIFY THE NAME OF ANY INDIVIDUAL WHO HAD

14    CONVERSATIONS WITH HIM.  THEY'RE IDENTIFIED BY LAST NAME.

15          AND, CERTAINLY, MR. WEISBERG CAN MAKE THE

16    CONNECTION BETWEEN THE LAST NAME AND THE FIRST NAME GIVEN

17    THE RESPONSES IN NUMBER FOUR.

18          IN REGARDS TO THE WOOD CASE, YOUR HONOR, WE'RE

19    DEALING WITH SOMEWHAT OF UNIQUE CIRCUMSTANCES.  WE DID

20    PRODUCE NOTES.  THOSE NOTES CONSISTED OF ONE PAGE.  AND

21    THAT'S WHAT MY CLIENT HAS IN ITS POSSESSION.

22          THE COURT:  WHY IS THAT?

23          MR. ORTIZ:  THE WOOD CASE INVOLVED AN ACCOUNT THAT

24    WE UNDERSTAND TO BE -- THE ACCOUNT THAT WE BELIEVE TO BE AT

25    ISSUE HERE IS A WELLS -- IS ONE THAT AROSE FROM A WELLS

```
 1   FARGO BALANCE -- OUTSTANDING BALANCE.

 2           MY CLIENT NO LONGER DOES BUSINESS WITH WELLS FARGO

 3   AND ANY AND ALL NOTES THAT WERE MAINTAINED ARE IN WELLS

 4   FARGO'S POSSESSION, NOT MY CLIENT'S.

 5           THE COURT:  OKAY.

 6           MR. ORTIZ:  SO, AGAIN, YOUR HONOR -- AND WE PUT

 7   THIS IN OUR RESPONSE -- IN OUR RESPONSE BRIEF, WE PRODUCED

 8   EVERYTHING THAT WE HAVE AND WE CAN'T PRODUCE SOMETHING THAT

 9   WE DON'T HAVE CONTROL OR CUSTODY OVER.

10           THE COURT:  MR. WEISBERG, HAVE YOU HAD A CHANCE TO

11   GO THROUGH THE NOTES THAT HAVE BEEN PRODUCED?  HE -- THEY

12   CLAIM 400 SOME DOCUMENTS PRODUCED.

13           HAVE YOU HAD A CHANCE TO GO THROUGH ALL OF THOSE?

14           MR. WEISBERG:  WELL, NO, BECAUSE -- I DON'T KNOW

15   WHAT THE ONE PAGE THEY'RE TALKING ABOUT IS, YOUR HONOR.

16           THERE IS -- THEY PROVIDED SOMETHING SAYING HERE'S

17   THE NOTES FOR THE TWO CASES.  THERE'S ONE PAGE.  IT DOESN'T

18   REFERENCE MR. WOOD AT ALL ON THERE, SO I REALLY DIDN'T KNOW

19   WHAT IT WAS.

20           IT JUST HAS -- I DON'T KNOW WHAT IT IS.  IT JUST

21   HAS A -- IT LOOKS LIKE A SERIES OF PHONE CALLS AND NOTHING

22   ELSE.

23           SO, I DON'T KNOW IF THAT'S WHAT THEY ARE REFERRING

24   TO.  IT DOESN'T EVEN MENTION MR. WOOD, BUT -- I MEAN, WE'RE

25   NOT ASKING FOR ANYTHING FROM WELLS FARGO.  WE'RE ASKING FOR
```

1    GC SERVICES ACCOUNTS OF WHAT THEY DID TO TRY TO COLLECT THIS

2    DEBT.

3              I DON'T KNOW IF IT'S BEEN PRODUCED.  I HAVE ONE

4    PAGE.  AGAIN, IT MAKES NO MENTION OF MR. WOOD, SO I DON'T

5    KNOW IF THAT'S WHAT THEY ARE REFERRING TO.

6              MR. ORTIZ:  YOUR HONOR, I DON'T KNOW WHAT TO SAY.

7    THE COVER LETTER ATTACHED TO -- THAT WENT ALONG WITH THE

8    NOTE CLEARLY SAYS WHAT WAS PRODUCED, SO --

9              THE COURT:  HOW DOES HE IDENTIFY THE ONE PAGE FROM

10   THE WOOD FILE, IF YOU KNOW?  IS THERE SOMETHING DISTINCTIVE

11   ABOUT THAT?  WOULD THE PHONE NUMBERS REVEAL --

12             MR. ORTIZ:  SURE.  I MEAN, WE -- WE BATES STAMPED

13   EVERYTHING, YOUR HONOR, SO --

14             THE COURT:  ARE YOU ABLE TO -- SO, ARE YOU ABLE TO

15   TELL ME WHICH ONE RELATES TO WOOD?

16             MR. ORTIZ:  YEAH, ABSOLUTELY.  JUST ONE SECOND,

17   YOUR HONOR.

18             MR. WEISBERG:  SO, THERE DOES LOOK LIKE THERE'S

19   THAT ONE PAGE, YOUR HONOR, THAT IT SAYS GC SERVICES CALL

20   DETAIL SEARCH.

21             MR. ORTIZ:  THAT'S IT, YOUR HONOR.  THAT'S IT.

22             THE COURT:  OKAY.

23             SO, MR. WEISBERG, YOU ARE BEING ADVISED BY COUNSEL

24   THAT'S THE ONE DOCUMENT THEY HAVE THAT RELATES TO MR. WOOD.

25             IT APPEARS IF YOU'RE GOING TO FIND OTHER DOCUMENTS

```
1    RELATED TO MR. WOOD, YOU MAY HAVE TO GO THROUGH WELLS FARGO

2    TO --

3              MR. WEISBERG:  SO I'M CLEAR, THEY'RE REPRESENTING

4    THAT THAT IS THE ONLY DOCUMENT THEY HAVE REFLECTING THEIR

5    COLLECTION ATTEMPTS ON MR. WOODS' ACCOUNT?

6              THE COURT:  THAT'S WHAT HE SAID.  THAT'S WHAT HE

7    SAID.  LET'S MOVE FORWARD HERE.

8              MR. WEISBERG:  OKAY.

9              THE COURT:  THE -- WELL, LET ME GO BACK TO YOU,

10   MR. WEISBERG.

11             I ASKED YOU WHETHER OR NOT YOU'VE LOOKED THROUGH

12   THESE DOCUMENTS AND YOU GOT OFF ON TALKING ABOUT THE ONE

13   PAGE HERE WITH MR. --

14             MR. WEISBERG:  YEAH.

15             THE COURT:  YOU HAVE OTHERWISE LOOKED AT THEM?

16             MR. WEISBERG:  YES.

17             THE COURT:  AND DO THEY PROVIDE YOU WITH THE NOTES

18   RELATED TO THE VARIOUS -- THE PARTICULAR CALLS THAT ARE IN

19   DISPUTE HERE?

20             MR. WEISBERG:  THAT DOCUMENT FOR WOOD DOES NOT AS

21   FAR AS I'M CONCERNED, YOUR HONOR.  I DON'T KNOW WHAT IT HAS,

22   BUT IT DOESN'T -- THE ONE THEY HAVE GIVEN US ON ELLIOT,

23   WHICH IS ABOUT TEN PAGES MAYBE OR EIGHT PAGES WORTH OF NOTES

24   SEEMS TO ACTUALLY INCLUDE ALL THEIR COLLECTION ATTEMPTS,

25   LETTERS, CALLS, THINGS LIKE THAT.
```

1          THIS ONE PAGE CALL DETAIL SEARCH, I DON'T KNOW

2   WHAT IT IS.  IT DOESN'T SAY WHAT WAS SAID DURING ANY PHONE

3   CALL, WHO CALLED, DOESN'T REALLY TELL ME ANYTHING.

4          MR. ORTIZ:  YOUR HONOR -- YOUR HONOR, IF I MAY.

5   LET ME CLARIFY SOMETHING FOR THE COURT THAT MAY MAKE THINGS

6   A LITTLE BIT EASIER IN ORDER TO NARROW THE ISSUES HERE.

7          ALL RIGHT.  I THINK THE COURT SHOULD APPRECIATE

8   THE FACT THAT IN WOOD, YOUR HONOR, WHAT WE'RE DEALING WITH

9   ARE VOICE MAIL MESSAGES THAT APPARENTLY ARE IN

10  MR. WEISBERG'S POSSESSION, ONLY ONE OF WHICH HE HAS

11  PRODUCED.  OKAY.  SO, HE HAS THAT.

12          WE'RE ALSO DEALING WITH A TCPA CLAIM TO WHICH

13  THERE IS NO VALIDITY TO IT WHATSOEVER.  AND I'VE TRIED TO

14  EXPLAIN THAT TO MR. WEISBERG NUMEROUS TIMES.  AND WHETHER A

15  LETTER WAS SENT PURSUANT TO THE FTCPA FIVE DAYS AFTER THE

16  INITIAL COMMUNICATION.

17          SO, TO THE EXTENT THAT MR. WEISBERG IS TRYING TO

18  PORTRAY TO THE COURT THAT THERE IS ALL THESE CALLS, YOUR

19  HONOR, THAT'S JUST NOT THE CASE.

20          THIS IS A VERY SIMPLE CASE.  THE COURT MAY BE

21  FAMILIAR WITH THE TERM OF FOTI.  THIS IS ESSENTIALLY WHAT

22  MR. WEISBERG'S CLAIM IS; THAT THERE IS A FOTI VIOLATION

23  HERE.

24          AND, TO MY UNDERSTANDING, BASED UPON HIS INITIAL

25  DISCLOSURES, THERE ARE A NUMBER OF RECORDINGS, AGAIN, ONLY

1   ONE OF WHICH HE HAS PRODUCED, TO WHICH, YOU KNOW, GOES TO

2   HIS CLAIM.

3           SO, I THINK THAT IN THIS ONE, ESPECIALLY WITH THE

4   WOOD CASE, WE'RE SORT OF, YOU KNOW, MAKING A MOUNTAIN OUT OF

5   A MOLE HILL, SO TO SPEAK, YOUR HONOR, BECAUSE EVERYTHING

6   THAT MR. WEISBERG NEEDS IS IN HIS POSSESSION IN REGARDS TO

7   HIS CLAIM.

8           THE COURT:  WHAT DO YOU SAY TO THAT, MR. WEISBERG?

9   DO YOU HAVE THE RECORDINGS OF EACH OF THE CALLS THAT ARE

10  COMPLAINED OF?

11          MR. WEISBERG:  I COULDN'T TELL YOU IF I HAD THE

12  RECORDINGS FOR EACH OF THE CALLS, YOUR HONOR.  I CERTAINLY

13  DO HAVE A FEW RECORDINGS.  ABSOLUTELY.  I DON'T KNOW THAT

14  THOSE ARE ALL THE CALLS THAT WERE MADE.

15          THE COURT:  WELL, DO THEY COVER ALL THE CALLS THAT

16  YOU HAVE SUED ABOUT OR COMPLAINED ABOUT?

17          MR. WEISBERG:  THAT'S WHAT I'M SAYING, I DON'T

18  KNOW, YOUR HONOR.  WE HAVE REQUESTED -- OBVIOUSLY, GC

19  SERVICES SHOULD HAVE RECORDS OF ALL THE CALLS THEY MADE.

20          I DON'T KNOW IF THE FEW RECORDINGS THAT I HAVE

21  CONSTITUTE ALL THE CALLS THAT WERE MADE BY GC SERVICES.  I

22  WOULD ASSUME IT DOESN'T.  BUT I JUST CAN'T REALLY TELL FROM

23  THE DOCUMENT -- THE ONE-PAGE DOCUMENT THAT WAS PRODUCED.

24          THE COURT:  YOU'RE NOT ANSWERING MY QUESTION.  MY

25  QUESTION IS:  DO YOU HAVE RECORDED PHONE CALLS FOR EACH OF

```
 1    THE CALLS THAT YOU COMPLAIN ABOUT?

 2              MR. WEISBERG:  I DON'T KNOW, YOUR HONOR.

 3              THE COURT:  YOU HAVE NOT COMPARED WHAT CALLS YOU

 4    HAVE TO THE CALLS THAT YOU COMPLAIN ABOUT IN YOUR COMPLAINT?

 5              MR. WEISBERG:  OUR CALL -- OUR COMPLAINT DOESN'T

 6    REFERENCE SPECIFIC CALLS.  OUR COMPLAINT REFERENCES ALL THE

 7    CALLS THAT THEY MADE TO MY CLIENT; SPECIFICALLY, FOR THE

 8    TCPA, ANY CALLS THEY MADE, YOU KNOW, TO MY CLIENT'S

 9    CELLPHONE FROM AN AUTOMATED DIALER.

10              THE COURT:  DO YOU HAVE ANY EVIDENCE THAT THERE'S

11    A TCPA VIOLATION HERE?  I MEAN, IT -- THE SUGGESTION IS

12    THAT'S NOT THE TYPE SYSTEM THEY HAVE AND THAT PARTICULAR

13    CLAIM NEEDS TO BE RESOLVED EARLIER RATHER THAN LATER.

14              I UNDERSTAND, OBVIOUSLY, YOU HAVE THE RIGHT TO

15    EXPLORE YOUR ALLEGATIONS THERE, BUT IF I'M HEARING THE -- IF

16    I'M READING THE WRITTEN REPRESENTATIONS CORRECTLY AND

17    HEARING THE ORAL REPRESENTATIONS, THAT CLAIM SIMPLY DOESN'T

18    EXIST.

19              MR. WEISBERG:  WELL, YOUR HONOR, WHEN WE DISCUSSED

20    THIS, MR. ORTIZ AND I, BACK LAST NOVEMBER AND I SAID ALL I

21    WOULD LIKE TO SEE IS AN AFFIDAVIT SAYING THAT THERE WAS NO

22    AUTOMATED DIALER CALLS, THAT THESE ARE -- I MEAN -- YEAH,

23    THESE ARE ALL MANUAL CALLS, THAT'S ALL I -- AND I TOLD HIM

24    THAT BACK IN -- I HAVE AN E-MAIL I'M LOOKING AT FROM

25    NOVEMBER 24TH SAYING IF YOU'RE SAYING THESE WEREN'T, YOU
```

1  KNOW, AUTOMATED CALLS, GIVE ME AN AFFIDAVIT THAT STATES

2  THAT, THAT WILL TAKE CARE OF IT.

3          I HAVE YET TO SEE THAT AFFIDAVIT.  SO, AT THIS

4  POINT, I OBVIOUSLY HAVE BEEN MOVING FORWARD AND I'M ENTITLED

5  TO DO DISCOVERY TO ASCERTAIN WHETHER OR NOT THOSE WERE

6  AUTOMATED CALLS.

7          MR. ORTIZ:  YOUR HONOR, FOR WHAT IT'S WORTH -- AND

8  I DON'T WANT TO BELABOR THIS ISSUE, BECAUSE I DON'T THINK

9  THAT THAT'S WHY THE COURT HAS ASKED US TO -- ASKED US TO

10 APPEAR BEFORE YOU, YOUR HONOR, BUT IF WE'RE GOING TO BE

11 ACCURATE HERE, MR. WEISBERG REPRESENTED TO BOTH MYSELF AND

12 TO MY PARTNER, MR. SICKLES, THAT HE HAD ABSOLUTELY NO

13 EVIDENCE WHATSOEVER TO BRING THE CLAIM -- ANY GOOD FAITH

14 BASIS TO ASSERT THE TCPA CLAIM.

15         HE HAD NO EVIDENCE WHATSOEVER THAT AN AUTO-DIALER

16 WAS USED BY THIS SPECIFIC OFFICE FOR GC SERVICES THAT'S AT

17 ISSUE.

18         AND, YOUR HONOR, THAT'S VERY TROUBLING, BECAUSE,

19 YOU KNOW, PURSUANT TO RULE 11, YOU HAVE TO HAVE A GOOD FAITH

20 BASIS TO BE ABLE TO MAKE A CLAIM, OR, YOU HAVE TO PLEAD UPON

21 INFORMATION AND BELIEF.  NEITHER OF WHICH WERE DONE HERE.

22         AND MY CLIENT'S TAKEN THE POSITION THAT THAT CLAIM

23 SHOULD HAVE NEVER BEEN ASSERTED IN THE FIRST PLACE AND HAS

24 EVEN GONE FURTHER TO SAY THAT, YOU KNOW, THAT CLAIM IS

25 SOMETHING THAT JUST GOT THROWN INTO THE COMPLAINT IN ORDER

1    TO HOLD UP OUR ABILITY TO BE ABLE TO RESOLVE THE CASE, WHICH

2    WE HAVE BEEN TRYING TO DO FROM THE OUTSET.

3              THE COURT:  ALL RIGHT.  WELL, AT AN APPROPRIATE

4    TIME, IF YOU THINK RULE SANCTIONS -- RULE 11 SANCTIONS ARE

5    APPROPRIATE, WE'LL ADDRESS IT.  HE CLAIMS TO WISH TO PURSUE

6    IT AND WE'LL SEE WHAT HAPPENS HERE.

7              LET'S GO BACK TO INTERROGATORIES.  I DON'T KNOW

8    ANY OTHER WAY TO DO THIS OTHER THAN TO PLOW THROUGH THIS.

9              I'M -- YOU KNOW, FROM THE -- TO THE DEFENDANT'S,

10   YOU CAN RESPOND TO THESE INTERROGATORIES, FRANKLY, BY

11   REFERENCING PRODUCTION, BUT THAT'S NOT WHAT YOU CHOSE TO DO

12   HERE.

13             AND, SO, I'M HEARING MR. ORTIZ SAY, WELL, YOU

14   KNOW, WE HAVE GIVEN THEM ALL THIS INFORMATION, BUT, IN FACT,

15   IT STILL LEAVES UNANSWERED THE INTERROGATORIES AND IT'S --

16   FRANKLY, I'M SIMPLY UNABLE TO DETERMINE WHETHER OR NOT THE

17   PRODUCTION WOULD SATISFY ANY OF THESE INTERROGATORIES, SO I

18   GUESS WE'RE JUST GOING TO HAVE TO PLOW THROUGH THIS.

19             IN INTERROGATORY SIX, YOU ASK FOR IDENTITY AND

20   DESCRIPTION OF EACH DOCUMENT KNOWN TO THE DEFENDANT WHICH

21   RELATES TO THE DEBT.

22             I'M HEARING MR. ORTIZ REPRESENT AS AN OFFICER OF

23   THE COURT THAT ALL DOCUMENTS RELATED TO EITHER OF THESE

24   CLAIMS HAVE BEEN PRODUCED.

25             IS THAT ACCURATE, MR. ORTIZ?

```
1              MR. ORTIZ:  YES, YOUR HONOR.

2              THE COURT:  ANYTHING BEEN WITHHELD?

3              MR. ORTIZ:  NO, YOUR HONOR.

4              THE COURT:  NOTHING?  NO PRIVILEGED DOCUMENTS, NO

5    CLAIMS OF THAT SORT THAT HAVE RESULTED IN DOCUMENTS NOT

6    BEING PRODUCED?

7              MR. ORTIZ:  NO, YOUR HONOR.  SIMPLY PUT, YOUR

8    HONOR, ALL THAT -- ALL THAT'S AT ISSUE RIGHT HERE ARE THE

9    ACCOUNT -- THE ACCOUNT NOTES.  I MEAN, THAT'S THE ONLY

10   DOCUMENT THAT GC SERVICES WOULD HAVE THAT DOCUMENTS WHAT

11   OCCURRED.

12             MR. WEISBERG:  WELL, THAT'S NOT WHAT THIS ONE ASKS

13   FOR, YOUR HONOR.

14             NUMBER SIX, WE'RE TALKING ABOUT DOCUMENTS RELATED

15   TO THE DEBT ITSELF.  NOT JUST THEIR ACCOUNT LISTING.  SO, IF

16   HE'S SAYING THAT THEY HAVE NO DOCUMENTS ON EITHER CASE

17   RELATING TO THE UNDERLYING DEBT ITSELF, THAT'S ONE THING,

18   BUT I DON'T KNOW IF THAT'S WHAT I'M HEARING.

19             MR. ORTIZ:  YOUR HONOR, YOU KNOW, AGAIN, YOU DRAW

20   A DISTINCTION HERE.  THERE IS A DIFFERENCE HERE BETWEEN

21   SOMEBODY WHO IS A, QUOTE/UNQUOTE, DEBT BUYER AND SOMEBODY

22   WHO IS A THIRD-PARTY COLLECTOR.

23             MY CLIENT IS NOT A DEBT BUYER.  THAT'S NOT AT

24   ISSUE IN EITHER ONE OF THESE TWO CASES.

25             THE COURT:  LET ME JUST GET THIS CLEAR.  YOU WERE
```

1    SIMPLY ACTING IN THE CAPACITY OF COLLECTING THESE DEBTS.

2    DID YOU IDENTIFY TO THE EXTENT THAT YOU HAD ANY DOCUMENTS OF

3    THE UNDERLYING DEBT?  WERE THOSE PROVIDED?  I DON'T KNOW

4    WHAT TYPE OF DOCUMENTS YOUR COMPANY COLLECTS IN THAT REGARD,

5    BUT --

6              MR. ORTIZ:  YOUR HONOR, ALL THAT -- ALL THERE

7    WOULD BE WOULD BE THE ACCOUNT NOTES.  THE ACCOUNT NOTES

8    REFERENCE WHAT OCCURRED IN REGARDS TO THE COLLECTION OF BOTH

9    ACCOUNTS.

10             THE COURT:  WHEN THIS DEBT -- WHEN THIS CREDITOR

11   COMES TO YOU AND SAYS, LOOK, YOU KNOW, WHATEVER NUMBER OF

12   ACCOUNTS THEY BRING TO YOU FOR COLLECTION, DO THEY -- WHAT

13   DO THEY PROVIDE YOU IN RELATION TO THE UNDERLYING DEBT?

14             THIS IS WHAT THIS SPECIFICALLY ASKS FOR.

15             MR. ORTIZ:  RIGHT.

16             THE COURT:  NOW, I HAVE ACCEPTED THAT YOU SAID YOU

17   HAVE GIVEN THEM EVERYTHING --

18             MR. ORTIZ:  RIGHT.

19             THE COURT:  -- BUT HE'S POINTING OUT IT GOES

20   SPECIFICALLY TO THE UNDERLYING DEBT.

21             MR. ORTIZ:  RIGHT.  WELL, AGAIN, YOUR HONOR, AND

22   WHAT -- OKAY.  ANY AND ALL INFORMATION REGARDING THE

23   UNDERLYING ACCOUNT IS NOT IN MY CLIENT'S POSSESSION ANY

24   LONGER.  IT'S IN WELLS FARGO'S POSSESSION.  IT ALWAYS HAS

25   BEEN IN WELLS FARGO'S COLLECTION -- POSSESSION.

```
 1            MY CLIENT WAS WORKING THROUGH THEIR COMPUTER

 2   SYSTEM.  SO, THEY HAVE THE RECORDS IN THEIR POSSESSION.

 3            THE COURT:  THAT GOES FOR BOTH WOOD AND ELLIOT?

 4            MR. ORTIZ:  NO, YOUR HONOR.  I'M ONLY TALKING

 5   ABOUT WOOD RIGHT NOW.

 6            THE COURT:  OKAY.

 7            MR. ORTIZ:  OKAY.

 8            THE COURT:  I'M TALKING ABOUT THEM BOTH.  OKAY.  I

 9   UNDERSTAND WHAT YOU ARE SAYING ABOUT WOOD.  WE'VE GOT ONE

10   DOCUMENT.  EVERYTHING ELSE WAS WITH WELLS FARGO.  SO --

11            MR. ORTIZ:  RIGHT.  AND IN REGARDS TO ELLIOT, YOUR

12   HONOR, THE ACCOUNT NOTES THAT WE PRODUCED OVER TO

13   MR. WEISBERG, PAGE NUMBER ONE, WHICH IS THE SUMMARY OF THE

14   INFORMATION THAT'S PROVIDED BY THE -- BY THE CREDITOR OVER

15   TO MY CLIENT, THAT IS WHAT MY CLIENT GETS, YOUR HONOR.

16            THE COURT:  OKAY.  AND, ESSENTIALLY, WHAT YOU HAVE

17   IN RELATION TO THE DEBT, YOU'VE PROVIDED?

18            MR. ORTIZ:  YES, YOUR HONOR.

19            THE COURT:  OKAY.  NEXT INTERROGATORY:  DESCRIBE

20   FULLY ANY SYSTEM, SCHEME, TECHNIQUE, PRACTICE, AND SO ON

21   THAT DEFENDANT MAINTAINS, OPERATES OR EMPLOYS TO RECORD,

22   MEMORIALIZE, SO ON AND SO FORTH.

23            THE -- AFTER STATING SOME GENERAL OBJECTIONS, THE

24   DEFENDANT SAYS THAT -- SEE COLLECTION EXCELLENCE LEVEL ONE

25   COLLECTION POLICIES AND PROCEDURES, COLLECTION EXCELLENCE
```

```
1    LEVEL TWO, SO ON AND SO FORTH.  WHICH WOULD SUGGEST TO ME
2    THAT THESE DOCUMENTS, WHATEVER THEY ARE, WOULD HAVE BEEN
3    PROVIDED OR COPIES --
4              MR. WEISBERG:  YEAH, THEY WERE DOCUMENTS THAT WERE
5    PRODUCED AFTER THE MOTION WAS FILED, YOUR HONOR.  AND I'M
6    NOT SURE IF THOSE WERE ALL PRODUCED.
7              I GUESS MR. ORTIZ COULD PROBABLY TELL US.
8              THE COURT:  WELL, IF, IN FACT, YOU RECEIVED THOSE,
9    DO YOU THINK YOU'RE ENTITLED TO SOMETHING ELSE?
10             MR. WEISBERG:  IF I RECEIVED EVERYTHING THAT THEY
11   HAVE LISTED AND THAT COVERS ALL THAT WE'RE ASKING FOR, THEN,
12   NO, I DON'T THINK WE'RE ENTITLED TO ANYTHING ELSE.
13             THE COURT:  WELL, I DOUBT IT THAT IT COVERS
14   EVERYTHING THAT WOULD FALL WITHIN THE BROAD LANGUAGE OF YOUR
15   REQUEST HERE, BUT THE --
16             MR. WEISBERG:  WELL --
17             THE COURT:  MR. ORTIZ, WERE THESE VARIOUS
18   COLLECTION EXCELLENCE THINGS AND WHAT HAVE YOU, WERE THEY
19   PROVIDED?
20             MR. ORTIZ:  YES, YOUR HONOR.  THEY WERE PROVIDED
21   PURSUANT TO THE PROTECTIVE ORDER AND WE LISTED THOSE
22   DOCUMENTS IN OUR INITIAL DISCLOSURES.
23             THE REASON THEY WEREN'T PRODUCED AT THE TIME OF
24   THE INITIAL DISCLOSURES WAS BECAUSE A PROTECTIVE ORDER
25   NEEDED TO BE PUT IN PLACE, YOUR HONOR.
```

```
 1              AND NOW THAT IT'S IN PLACE, WE HAVE PRODUCED A
 2    LITTLE UNDER 400 DOCUMENTS.  AND --
 3              THE COURT:  I DON'T CARE ABOUT -- I DON'T WANT TO
 4    KEEP HEARING ABOUT 400 DOCUMENTS.  WHEN I ASKED YOU WHETHER
 5    OR NOT THESE PARTICULAR DOCUMENTS, THAT'S WHAT I'M ASKING
 6    ABOUT.  WERE THEY PRODUCED?
 7              MR. ORTIZ:  YES, YOUR HONOR, THEY WERE.
 8              THE COURT:  OKAY.  GOOD.  THANK YOU.
 9              INTERROGATORY EIGHT:  IDENTIFY AND DESCRIBE
10    POLICIES AND PROCEDURES UTILIZED OR EMPLOYED BY DEFENDANT TO
11    AVOID VIOLATIONS OF THE FAIR DEBT COLLECTION.
12              AND, AGAIN, YOU IN RESPONSE OBJECT, BUT YOU ALSO
13    NOTE THESE VARIOUS DOCUMENTS THAT I JUST SUGGESTED IN THE
14    PRIOR INTERROGATORY.
15              THEY HAVE BEEN PROVIDED.  IS THERE SOMETHING ELSE
16    YOU THINK YOU SHOULD BE RECEIVING AT THIS POINT,
17    MR. WEISBERG?
18              MR. WEISBERG:  NO, NOT IF THE TRAINING MATERIALS
19    THAT WE HAVE ASKED FOR HAVE BEEN PROVIDED AND I THINK THAT'S
20    PROBABLY IT.
21              THE COURT:  NUMBER NINE:  TRAINING THAT
22    DEFENDANT'S PROVIDE NEW EMPLOYEES, WRITTEN AUDIO, VISUAL, SO
23    ON AND SO FORTH.
24              AGAIN, YOU CITE TO THOSE SAME DOCUMENTS.  ARE
25    THERE OTHER TRAINING MANUALS RELATED TO THIS TYPE OF
```

1    COLLECTION ACTIVITY THAT HAVE NOT BEEN PROVIDED?

2          MR. ORTIZ:  NOT TO MY KNOWLEDGE, YOUR HONOR.

3    EVERYTHING THAT WOULD BE -- THAT WOULD PERTAIN TO THEIR

4    TRAINING HAS BEEN PROVIDED.

5          THE COURT:  ALL RIGHT.  NUMBER 11, INTERROGATORY

6    11:  IDENTIFY ALL TELEPHONE NUMBERS UTILIZED BY THE

7    DEFENDANT'S TO CONTACT PLAINTIFF OR ANY THIRD-PARTY IN

8    CONNECTION WITH DEFENDANT'S ATTEMPT . . .

9          FOR THE LIFE OF ME, I DON'T UNDERSTAND THE

10   RELEVANCE OF THAT.  PERHAPS YOU CAN ENLIGHTEN ME,

11   MR. WEISBERG.

12         MR. WEISBERG:  YES, CERTAINLY.  THE NUMBER OF

13   PHONE CALLS AND COLLECTION CALLS IS WHAT WE'RE LOOKING AT.

14   SO, IF THEY ARE NOT ABLE TO GIVE US ALL THE INFORMATION WE

15   NEED TO GET IT FROM MY CLIENT'S PHONE RECORDS, SO WE NEED TO

16   SEE WHERE THESE PHONE CALLS CAME FROM.  GC SERVICES UTILIZES

17   MANY DIFFERENT PHONE NUMBERS.

18         SO, IF WE'RE LOOKING THROUGH MY CLIENT'S RECORDS,

19   WE WANT TO KNOW EXACTLY HOW MANY OF THE CALLS THERE WERE

20   GENERATED BY GC SERVICES, WE NEED TO KNOW WHAT NUMBERS THEY

21   CALLED FROM.

22         THE COURT:  DO YOUR -- THE COLLECTION NOTES THAT

23   HAVE BEEN PROVIDED, HOW DO THEY REFLECT A PARTICULAR CALL,

24   MR. ORTIZ?

25         MR. ORTIZ:  WELL, YOUR HONOR, A COUPLE OF THINGS.

1              FIRST OFF, MY UNDERSTANDING OF THAT INTERROGATORY

2    WAS ASKING WHAT NUMBER GC SERVICES CONTACTED EACH INDIVIDUAL

3    PLAINTIFF ON.  AND THAT INFORMATION HAS BEEN PROVIDED.

4              THE COURT:  HOW IS IT PROVIDED?

5              MR. ORTIZ:  WELL, IT WAS SUPPLEMENTED IN -- IT WAS

6    SUPPLEMENTED IN BOTH CASES, THE ACTUAL NUMBER THAT GC

7    SERVICES CALLED.

8              THE COURT:  BY INTERROGATORY RESPONSE OR THROUGH

9    THESE OTHER NOTES AND SO ON THAT HAVE BEEN PRODUCED?

10             MR. ORTIZ:  THROUGH INTERROGATORY RESPONSES.

11             THE COURT:  OKAY.  ALL RIGHT.

12             MR. WEISBERG:  THE ONLY --

13             MR. ORTIZ:  I CAN POINT THE COURT, FOR INSTANCE,

14   IN WOOD, YOUR HONOR, IF YOU WOULD LOOK AT PAGE SEVEN OF MY

15   BRIEF, JUDGE, INTERROGATORY NUMBER 11 CLEARLY PUTS IN THERE,

16   REPRESENTS TO THE COURT THAT GC SERVICES SUPPLEMENTED ITS

17   RESPONSE TO PROVIDE THE PHONE NUMBER IN QUESTION.

18             MR. WEISBERG:  YOUR HONOR, THEIR SUPPLEMENTAL

19   RESPONSE SAYS "THE BEST GUESS AS TO THE NUMBER UTILIZED TO

20   CONTACT PLAINTIFF WAS 727 -- (727) 236-1345.  THAT'S THEIR

21   SUPPLEMENTATION.

22             NUMBER ONE, WE'RE NOT ASKING FOR THEIR BEST GUESS.

23   WE WANT TO KNOW WHAT NUMBERS THEY UTILIZED.  AND, AGAIN, WE

24   ARE ASKING FOR WHAT NUMBERS THEY CALLED FROM.

25             MR. ORTIZ:  WELL, AGAIN, YOUR HONOR, MY READING --

```
 1    FROM MY READING OF THE INTERROGATORY WAS, WHAT NUMBER DID

 2    YOU CALL?  AND THAT'S THE INFORMATION THAT WE PROVIDED.

 3              THE COURT:  ALL RIGHT.  LET'S MOVE ON.  I'LL COME

 4    BACK TO THAT ONE WHEN I GET TO WRITING AN ORDER ON THIS.

 5              NUMBER 12:  AT THE TIME DEFENDANT INITIATED

 6    EFFORTS TO COLLECT THE DEBT, WAS DEFENDANT THE OWNER OF THE

 7    SUBJECT DEBT?

 8              I THINK THAT'S ALREADY BEEN ANSWERED.  DOES THE

 9    DOCUMENTS THAT HAVE BEEN PRODUCED, DO THEY REFLECT ON WHO

10    THE CREDITOR IS IN EACH INSTANCE?

11              MR. ORTIZ:  IN ELLIOT, YOUR HONOR, YES.  IN WOOD,

12    NO, BUT WE HAVE ALREADY LET COUNSEL KNOW THAT WELLS FARGO IS

13    THE CREDITOR.

14              THE COURT:  OKAY.  AND NONE OF THESE DEBTS ARE

15    OWNED BY GC?

16              MR. ORTIZ:  THAT'S CORRECT, YOUR HONOR.

17              THE COURT:  OKAY.  13:  AT THE TIME OF THE DEBT

18    REFERENCED IN PLAINTIFF'S COMPLAINT, WAS PURCHASER ASSIGNED

19    TO DEFENDANT FOR COLLECTION, IDENTIFY AND DESCRIBE THE

20    AMOUNT ALLEGEDLY OWED.

21              AGAIN, WOULD THAT BE REFLECTED IN THE PAGE ONE YOU

22    TALKED ABOUT WHICH REFLECTS ON WHO THE CREDITOR IS?

23              MR. ORTIZ:  IN ELLIOT, YES, YOUR HONOR.

24              THE COURT:  IS IT --

25              MR. WEISBERG:  IT HASN'T BEEN PROVIDED IN WOOD,
```

1    YOUR HONOR.  AND, YOU KNOW, THEY CAN ONLY SAY THAT

2    EVERYTHING IS IN THE POSSESSION OF WELLS FARGO SO MUCH.  I

3    MEAN, THEY'RE COLLECTING A DEBT.  THEY CERTAINLY KNEW HOW

4    MUCH THEY WERE ALLEGEDLY COLLECTING.

5         MR. ORTIZ:  YOUR HONOR, YOU KNOW, ONE THING

6    THAT -- ONE THING THAT I'M HEARING THAT MAYBE MR. WEISBERG

7    ISN'T TAKING INTO CONSIDERATION IS THE FACT THAT MY CLIENT

8    COLLECTS ON OUTSTANDING ACCOUNT BALANCES.

9         I CAN'T EVEN PUT A NUMBER ON THE AMOUNT OF

10   ACCOUNTS THAT THEY WORK ON.  SO, TO EXPECT MY CLIENT, WHEN

11   WE HAVE ALREADY REPRESENTED TO THE COURT THAT THEY DON'T

12   HAVE THE ACTUAL RECORDS IN THEIR POSSESSION, TO FIND A

13   NEEDLE IN A HAYSTACK ABOUT THE AMOUNT THAT WAS AT ISSUE,

14   THAT'S IMPOSSIBLE.

15        MY CLIENT DOESN'T HAVE THAT INFORMATION.  AND WE

16   HAVE ALREADY GIVEN MR. WEISBERG INFORMATION AS TO HOW HE CAN

17   OBTAIN THAT.

18        THE COURT:  THE NOTES THAT WE HAVE BEEN SPEAKING

19   OF HERE GENERALLY, ARE THEY ESSENTIALLY ALL MADE THROUGH A

20   DATABASE?  ARE THEY INDIVIDUALLY DOCUMENTED AND PUT INTO

21   SOME FILE?  HOW DO WE ACCUMULATE A COLLECTION LOG HERE AT

22   THIS COMPANY?

23        MR. ORTIZ:  WELL, YOUR HONOR, TO THE BEST OF MY

24   KNOWLEDGE, IT'S A LITTLE BIT OF BOTH.  THERE IS GENERAL

25   INFORMATION THAT WHEN THE ACCOUNTS COME OVER ARE PUT INTO

1   THE COMPUTER SYSTEM BY THE COMPUTER ITSELF.  AND THEN WHEN

2   THERE IS ACTUAL ACTIVITY; SUCH AS, A LETTER BEING SENT OUT;

3   SUCH AS, A RECORDING BEING MADE -- I'M SORRY, NOT A

4   RECORDING.  I'M SORRY.  A CALL BEING MADE, THOSE -- THAT

5   STUFF THAT IS PUT IN MANUALLY, THE ACTUAL CONTENT OF WHAT

6   WAS SAID DURING THE CALL.

7        THE COURT:  AND WHEN YOU GIVE THE DEBT UP, SUCH AS

8   OCCURRED HERE BECAUSE YOU'RE NO LONGER REPRESENTING WELLS

9   FARGO, YOU DON'T KEEP ANY RECORDS OF THAT BUSINESS ACTIVITY?

10       MR. ORTIZ:  YOUR HONOR, THE -- MY CLIENT WAS

11  WORKING OFF WELLS FARGO'S SYSTEM AND, THEREFORE, THAT'S --

12  THEY WEREN'T OPERATING OFF THEIR OWN SYSTEM, YOUR HONOR, SO

13  NO.  THE ANSWER TO YOUR QUESTION IS NO.

14       THE COURT:  ALL RIGHT.  OKAY.  INTERROGATORY 14:

15  IDENTIFY ALL PRESENT AND PAST CONTRACTS, AGREEMENTS.

16       HAS ANY PRODUCTION BEEN MADE -- THERE'S SOME,

17  AGAIN, OBJECTION, BUT THEN AT THE END SOME SUGGESTION THAT

18  SUBJECT TO AND WITHOUT WAIVING THE OBJECTIONS YOUR

19  INVESTIGATION WAS ONGOING AND WOULD BE SUPPLEMENTED.

20       AGAIN, I CAN'T TELL WHETHER OR NOT THERE'S BEEN

21  ANY PRODUCTION.  I'M NOT SO SURE THAT CONTRACTUAL AGREEMENTS

22  OF THIS SORT LEND ANYTHING TO THIS PARTICULAR SUIT, BUT, AS

23  A STARTING POINT, HAS ANY PRODUCTION BEEN MADE?

24       MR. ORTIZ:  ON THAT PARTICULAR INTERROGATORY, YOUR

25  HONOR, NO.  NO.  MY CLIENT STANDS ON ITS OBJECTIONS.

```
 1            THE COURT:  MR. WEISBERG, WHY DO WE NEED TO

 2   EXPLORE PRESENT AND PAST CONTRACTS?

 3            MR. WEISBERG:  WELL, YOUR HONOR, IN MY EXPERIENCE,

 4   I'VE SEEN CONTRACTS BETWEEN THESE CREDITORS AND DEBT

 5   COLLECTORS IN WHICH THEY ARE SPECIFICALLY REFERENCES WHAT

 6   THE DEBT COLLECTORS CAN AND CANNOT DO IN ORDER TO COLLECT A

 7   DEBT, WHAT IS PERMISSIBLE BY THE CREDITOR, ET CETERA, ET

 8   CETERA.

 9            ONE OF THE THINGS THAT THE DEFENDANT'S HAVE

10   ALLEGED IN THIS CASE IS THAT THESE WERE BONA FIDE ERRORS.

11   THEY RAISE THE DEFENSE OF A BONA FIDE ERROR.

12            SO, IF THEY ARE CLAIMING, WELL, EVEN IF THIS WAS

13   DONE BY A COLLECTOR, HE WAS ACTING ON HIS OWN, IT WAS A

14   MISTAKE, WE DIDN'T KNOW ANYTHING ABOUT IT, IT WAS A BONA

15   FIDE ERROR.

16            WELL, IF THE CONTRACT BETWEEN THE CREDITOR AND THE

17   COLLECTOR PERMITS THEM TO DO THIS OR, CONVERSELY, IF IT SAYS

18   YOU BETTER NOT DO THIS, IT WOULD GO TO WHETHER OR NOT THE

19   COLLECTORS WERE ACTING ON THEIR OWN, WHETHER OR NOT THEY

20   WERE ACTUALLY FOLLOWING THE POLICIES OF THEIR EMPLOYER,

21   THINGS ALONG THOSE LINES.

22            THEY HAVE RAISED THIS BONA FIDE ERROR DEFENSE AND

23   I THINK WE'RE ENTITLED TO EXPLORE THAT AND SEE WHETHER OR

24   NOT THESE ACTS WERE, IN FACT, INADVERTENT BONA FIDE ERRORS.

25            MR. ORTIZ:  YOUR HONOR, YOU KNOW, THAT'S -- IT'S
```

```
 1   AN INTERESTING ARGUMENT, BUT IT DOESN'T HOLD WATER, SO TO

 2   SPEAK, YOUR HONOR.

 3        OUR BONA FIDE ERROR DEFENSE, YOUR HONOR, IF THAT'S

 4   WHAT MR. WEISBERG IS ALLUDING TO, IS BASED UPON THE TRAINING

 5   MATERIALS THAT HAVE BEEN PRODUCED.  ALL RIGHT.  AND WHEN

 6   MR. WEISBERG SAYS THEIR EMPLOYER, YOUR HONOR, THE CREDITORS

 7   AREN'T MY CLIENT'S EMPLOYERS.

 8        MY CLIENT -- THE INDIVIDUALS WHO CALLED BOTH OF

 9   THESE PLAINTIFFS ARE EMPLOYED BY GC SERVICES.  THEY ARE

10   TRAINED BY GC SERVICES AND THE TRAINING MATERIALS THAT HAVE

11   BEEN PROVIDED CONSTITUTE WHAT TRAINING THEY RECEIVED, WHAT

12   THEY'RE PERMITTED TO DO, WHAT THEY'RE NOT PERMITTED TO DO.

13        AND I SHOULD ADD TO THE COURT -- I SHOULD ADD, YOU

14   KNOW, ONE OF THE OBJECTIONS THAT WE MAKE, YOUR HONOR, IS THE

15   FACT THAT THIS IS SO OVERBROAD.

16        THE COURT:  I DON'T NEED ANY MORE.

17        INTERROGATORY 15:  IDENTIFY BY CAPTION, COURT

18   CIVIL ACTION ALL LITIGATION FILED AGAINST DEFENDANT ALLEGING

19   VIOLATIONS OF THE FTCPA.

20        AGAIN, QUITE BROAD.  SOME WAY TO NARROW THIS TO --

21   I GO BACK AND FORTH, FRANKLY, ON THESE TYPE OF INTERROGATORY

22   REQUESTS.

23        THERE ARE CASES WHERE I THINK IT'S A LEGITIMATE

24   INQUIRY, BUT, INVARIABLY, AS THEY'RE WORDED THEY STRIKE ME

25   AS BEING OVERBROAD.
```

1          SOME WAY THAT YOU CAN NARROW THIS, MR. WEISBERG,

2    THAT MAKES IT MORE RELEVANT --

3          MR. WEISBERG:  YEAH, I THINK SO.  YOUR HONOR, I

4    SUPPOSE IF WE TAILOR IT TO THE SPECIFIC VIOLATIONS THAT ARE

5    AT ISSUE IN THESE CASES, I SUPPOSE THAT WOULD NARROW IT

6    SIGNIFICANTLY, AS OPPOSED TO JUST GENERAL COMPLAINTS MADE

7    AGAINST THEM FOR ANY VIOLATIONS.

8          MR. ORTIZ:  AND, YOUR HONOR, THIS IS MR. ORTIZ.

9    I'M SORRY.  FOR WHAT IT'S WORTH, YOUR HONOR, WE PROVIDED THE

10   COURT WITH CASE LAW, INCLUDING THE DONNELLY CASE OUT OF THE

11   NORTHERN DISTRICT OF ILLINOIS AND THIS EXACT DISCOVERY

12   REQUEST WAS AT ISSUE IN THAT CASE.

13         AND THE COURT IN THE DONNELLY CASE STATED OR

14   DENIED THE MOTION TO COMPEL BECAUSE OF THE FACT THAT THIS IS

15   JUST SIMPLY NOT RELEVANT FOR PURPOSES OF THE STATUTES THAT

16   ARE AT ISSUE HERE.

17         THE STATUTES AT ISSUE HAVE NOTHING TO DO WITH WHAT

18   MY CLIENT MAY OR MAY NOT HAVE DONE ALLEGEDLY, I SHOULD POINT

19   OUT, WITH RESPECT TO OTHER PLAINTIFFS OR OTHER INDIVIDUALS.

20         THIS IS NOT A CLASS ACTION.  THIS IS AN INDIVIDUAL

21   ACTION.  SO, FOR PURPOSES OF DAMAGES, SHOULD WE GET TO THAT

22   POINT, THE COURT'S FOCUS WOULD BE ON WHAT HAPPENED IN THIS

23   CASE AND NOT WHAT GC SERVICES HAS DONE GLOBALLY SINCE --

24         THE COURT:  I THINK WHERE I'VE FALLEN ON THE SIDE

25   OF REQUIRING SOME ANSWER OR SOME PRODUCTION IN THESE TYPE

```
1   INQUIRIES TYPICALLY ARISES IN THE CONTEXT OF WHERE A PARTY
2   HAS ASSERTED A DEFENSE THAT THIS MIGHT BE RELEVANT TO
3   REFUTING THE -- I'M INCLINED TO THINK AT THIS POINT IT IS
4   OVERBROAD, BUT I'M NOT INCLINED TO SAY THAT THAT'S THE END
5   OF THE ISSUE.  I'LL PUT SOME LANGUAGE IN THERE THAT SUGGESTS
6   THAT MAYBE WE CAN REVISIT THIS AFTER WE'VE DONE SOME
7   ADDITIONAL DISCOVERY HERE.
8            INTERROGATORY 18:  ALL -- IDENTIFY ALL TELEPHONE,
9   TELEGRAPH, CABLE, BLAH, BLAH, BLAH, BLAH, BLAH,
10  COMMUNICATION PROVIDERS, SUPPLIERS, SERVICES UTILIZED BY THE
11  DEFENDANT IN CONNECTION WITH THE COLLECTION ACTIVITY.
12           AGAIN, STRIKES ME AS QUITE OVERBROAD,
13  MR. WEISBERG, NOT NECESSARILY LEADING TO ANYTHING RELEVANT.
14           WHAT'S THE INQUIRY HERE?
15           MR. WEISBERG:  WELL, WE'RE CERTAINLY ENTITLED TO
16  SUBPOENA THE PHONE RECORDS FROM THESE COMPANIES TO FIND OUT
17  WHETHER OR NOT HOW MANY CALLS WERE MADE.
18           AGAIN, IT GOES TO THE NUMBER OF CALLS THAT WERE
19  MADE BY THE DEFENDANT IN EACH CASE TO COLLECT THIS DEBT.
20  THAT'S DIRECTLY AT ISSUE.
21           SO, I MEAN, IF WE CAN'T NECESSARILY RELY ON THE
22  DOCUMENTS PROVIDED BY GC OR EVEN IF WE CAN, I THINK WE'RE
23  ENTITLED TO SUBPOENA THE RECORDS FROM THOSE PHONE COMPANIES
24  JUST LIKE THEY'D BE ENTITLED TO, YOU KNOW, ASK THE SAME OF
25  MY CLIENT AND SUBPOENA HIS CELLPHONE RECORDS.
```

1          MR. ORTIZ:  WELL, YOUR HONOR, A COUPLE OF THINGS.

2     FIRST OFF -- AND I NEED TO MAKE A DISTINCTION AGAIN BETWEEN

3     TWO CASES AND WOOD, YOUR HONOR.

4          THE NUMBER OF CALLS THAT WERE -- THAT WERE OR WERE

5     NOT MADE IS NOT AT ISSUE.  THERE IS NO HARASSMENT CLAIM

6     HERE.  SO, I WOULD -- YOU KNOW, I WOULD -- I DISAGREE WITH

7     MR. WEISBERG'S RECITATION OF WHAT'S IN HIS COMPLAINT.

8          AND THE INFORMATION THAT MR. -- THAT MR. WEISBERG

9     IS REQUESTING, IT'S SIMPLY OVERBROAD.  I MEAN, THERE'S NO

10    EVIDENCE THAT THERE WERE CABLE COMMUNICATIONS, TELEGRAPH

11    COMMUNICATIONS, ELECTRONIC COMMUNICATIONS.  NONE OF THOSE

12    ARE -- NONE OF THOSE ARE AT ISSUE.

13         AND, YOU KNOW, LASTLY, I JUST WANT TO NOTE FOR THE

14    COURT, YOUR HONOR, THAT WE PROVIDED -- YOU KNOW, WE PROVIDED

15    IN BOTH CASES THE CALLS THAT WERE MADE, SO THAT'S NOW IN

16    PLAINTIFF'S POSSESSION IN BOTH CASES.

17         THERE COMES A POINT IN TIME HERE WHERE THERE HAS

18    GOT TO BE A LIMIT IN DISCOVERY.  AND WHEN YOU TAKE MY

19    CLIENT'S BUSINESS INTO CONSIDERATION AND THE FACT THAT THEY

20    COLLECT ESSENTIALLY ALL OVER THE COUNTRY, WE'RE TALKING

21    ABOUT MILLIONS AND MILLIONS AND MILLIONS OF PAGES OF

22    RECORDS.

23         AND I DON'T -- I THINK THAT ANY BENEFIT THAT COULD

24    POTENTIALLY COME TO MR. WEISBERG IS FAR OUTWEIGHED BY THE

25    COSTS OF THE BURDEN HERE, YOUR HONOR.

1          THE COURT:  WELL, THIS IS ONLY AN INTERROGATORY

2    AND ONLY ASKS YOU TO IDENTIFY THE TELEPHONE PROVIDERS, SO

3    ULTIMATELY DISCOVERY DOWN THAT ROAD MIGHT BE QUITE

4    VOLUMINOUS, BUT IT'S NOT PARTICULARLY ONEROUS HERE.  WE'LL

5    ADDRESS IT IN THE ORDER.

6          THE BALANCE OF THE INTERROGATORIES ARE CONTENTION

7    INTERROGATORIES.  I'M -- YOU KNOW, MY APPROACH ON CONTENTION

8    INTERROGATORIES IS GENERALLY TO TRY TO GET THE PARTIES TO

9    AGREE, IF I CAN, TO DELAY THE -- THE RESPONSE TIME ON THESE

10   MATTERS.

11          I THINK THEY ARE IMPORTANT.  I THINK THEY ARE

12   USEFUL, BUT I ALSO THINK IF THEY ARE USED TOO EARLY IN THE

13   LITIGATION, THEY'RE FRANKLY UNFAIR AND JUST -- JUST DON'T

14   LEAD TO A WHOLE LOT OF USEFUL DISCOVERY SOMETIMES.

15          MR. WEISBERG:  YOUR HONOR, IF I MAY, INTERROGATORY

16   21 GOES DIRECTLY TO THE ALLEGATION ON THIS CASE, WHETHER OR

17   NOT THEY PROVIDED THE PROPER NOTICE UNDER 1692(G).  IT GOES

18   DIRECTLY TO THAT.  EITHER THEY SENT THE LETTER OR THEY

19   DIDN'T.

20          YOU KNOW, THAT'S REALLY WHAT'S IT ALL ABOUT.  AND

21   THEY HAVE MADE THIS LONG EXPLANATION AND OBJECTION SAYING

22   SUBJECT TO, THE INVESTIGATION IS ONGOING.

23          WELL, YOUR HONOR, THE DISCOVERY HAS BEEN GOING ON

24   FOR A WHILE.  WE HAVE GRANTED THEM MULTIPLE EXTENSIONS.

25   THERE IS JUST NO WAY THAT THEY CAN'T TELL US WHETHER OR NOT

1    THEY SENT THE INITIAL DUNNING LETTER TO MY CLIENT, WHICH IS

2    REALLY ALL WE'RE ASKING ABOUT AT THIS POINT.

3         MR. ORTIZ:  YOUR HONOR, THIS IS MR. ORTIZ.  YOU

4    KNOW, IT'S CLEAR TO ME THAT MR. WEISBERG HAS NOT READ THE

5    DISCOVERY RESPONSES HERE.

6         HAD HE READ THEM, HE WOULD KNOW THAT THE -- THAT

7    NUMBER 21 IN ELLIOT HAS BEEN SUPPLEMENTED TO STATE THAT

8    THERE WAS A LETTER SENT, THE DATE THAT IT WAS SENT AND THE

9    CONTENT IN THAT LETTER.

10        THE COURT:  HAS THAT LETTER BEEN PRODUCED?

11        MR. WEISBERG:  I DON'T BELIEVE SO, BUT I WAS

12   TALKING ABOUT WOOD.

13        MR. ORTIZ:  AND, ALEX, LIKE I TOLD YOU ALREADY, IN

14   WOOD, WE PRODUCED WHAT MY CLIENT HAS.

15        THE COURT:  WAS IT PRODUCED IN THE ELLIOT MATTER,

16   ANY OF THE CORRESPONDENCE?

17        MR. WEISBERG:  NO.  MAYBE THERE IS A SUPPLEMENTAL

18   INTERROGATORY WHERE THEY MAY HAVE SAID THEY SENT THE LETTER

19   OUT, BUT, NO, THE LETTER WAS NOT PRODUCED.

20        BUT IN ELLIOT, YOUR HONOR, OKAY, THEY DON'T HAVE A

21   COPY OF THE LETTER.  DOES THAT MEAN THEY CAN'T EVEN TELL US

22   WHETHER OR NOT THIS NOTICE WAS EVER GIVEN?  BECAUSE IF THEY

23   WANT TO ADMIT TO THAT, GREAT.  GREAT.  I'LL FILE A MOTION

24   FOR SUMMARY JUDGMENT.  I MEAN, THAT'S ONE OF THE DIRECT

25   ALLEGATIONS WE MADE IN THE CASE.  THEY DIDN'T SEND NOTICE.

```
 1    IF THEY CAN'T SAY OTHERWISE, FINE.  LET'S PUT THAT IN THE

 2    ORDER.

 3            MR. ORTIZ:  YOUR HONOR, AGAIN, MR. WEISBERG IS

 4    SPEAKING ABOUT ELLIOT.  AND THE -- THE INTERROGATORY WAS

 5    SUPPLEMENTED.  THE RESPONSE WAS SUPPLEMENTED TO STATE THAT

 6    THE LETTER WAS SENT, THE DATE THAT IT WAS SENT AND THE

 7    CONTENT OF THAT LETTER.  THAT IS IN MR. WEISBERG'S

 8    POSSESSION.

 9            THE COURT:  DO YOU KEEP COPIES ELECTRONICALLY OR

10    OTHERWISE OF THE CORRESPONDENCE THAT GOES OUT?

11            MR. ORTIZ:  THE ACTUAL LETTER, NO, YOUR HONOR.

12    WHAT WE WOULD HAVE IN ELLIOT, AND IT'S CONSISTENT WITH THE

13    RECORDS, IS WHEN THE LETTER WAS SENT OUT.  THAT'S

14    DOCUMENTED.

15            MR. WEISBERG:  YOUR HONOR, I'M NOT TALKING ABOUT

16    ELLIOT.  I'M TALKING ABOUT WOOD.  IN THE WOOD CASE, WE HAVE

17    DIRECTLY ALLEGED THAT THEY DIDN'T GIVE THE PROPER NOTICE

18    PURSUANT TO 1692(G).  THAT'S WHY WE'VE ASKED THIS QUESTION.

19    AND ALL WE'RE ASKING IS DID THEY, IN FACT, GIVE THE NOTICE,

20    WHETHER ORALLY OR IN WRITING, AND THEY HAVE OBJECTED SAYING

21    OUR INVESTIGATION IS ONGOING.  THAT'S DIRECTLY WHAT THE CASE

22    IS ALL ABOUT.  IF THEY CAN'T SAY, YES, WE SENT IT, THEN THEY

23    CAN'T DEFEND THE CASE.  I MEAN, THAT'S FINE.

24            MR. ORTIZ:  WELL, THAT'S INACCURATE IN THE WOOD

25    CASE AND -- AGAIN, I DON'T MEAN -- I DON'T MEAN TO SOUND
```

```
1   LIKE A BROKEN RECORD, BUT I'LL REPEAT MYSELF FOR THE FIFTH

2   OR SIXTH TIME NOW TO MR. WEISBERG --

3          THE COURT:  YOU DON'T NEED TO THAT.

4          ON INTERROGATORY 23 -- I'M GOING TO ADDRESS 21 AND

5   22, I'M GOING TO HANDLE THAT IN A FASHION THAT I SOMETIMES

6   DO IN THESE CONTENTION INTERROGATORIES AND IT WILL

7   ESSENTIALLY PERMIT THE DEFENDANT A SPECIFIC PERIOD OF TIME

8   WITHIN WHICH TO COMPLETE ANY INVESTIGATION AND TO RESPOND.

9          IT, IN EFFECT, GIVES YOU AN EXTENSION OF TIME TO

10  ANSWER THAT ONE -- OR THOSE TWO.

11         WITH REGARDS TO 21, I THINK THIS IS -- THIS IS THE

12  ONE THAT RAISES THE --

13         MR. WEISBERG:  I'M SORRY, YOUR HONOR, IS IT 23 YOU

14  ARE TALKING ABOUT?

15         THE COURT:  EXCUSE ME, 23.

16         MR. WEISBERG:  OKAY.

17         MR. SICKLES:  WELL, THEY'RE DIFFERENT IN EACH

18  CASE.

19         THE COURT:  ARE THEY?  YEAH, THIS ONE --

20         MR. SICKLES:  23 IS DIFFERENT IN ELLIOT THAN IT IS

21  IN WOOD.

22         THE COURT:  IN THE -- I'M LOOKING AT THE WOOD 23,

23  WHICH ASKS FOR -- OR ASKS DEFENDANT:  DID DEFENDANT LEAVE

24  VOICE MAIL MESSAGES ON PLAINTIFF'S CELLULAR PHONE IN THE

25  WOOD MATTER?
```

1          AND IN THE ELLIOT MATTER, IT ASKS, DID DEFENDANT

2    MAKE INITIAL CONTACT VIA TELEPHONE ON MAY 5, 2010?

3          TALK ABOUT THE -- TALK ABOUT THE WOOD MATTER.

4    REGARDLESS OF WHETHER YOU HAVE THE DOCUMENTS -- THIS IS THE

5    KIND OF THING THAT'S AN APPROPRIATE INQUIRY, BUT I ALSO

6    THINK THIS -- IS THIS THE ONE THAT YOU RAISED THE TCPA

7    MATTER?

8          MR. WEISBERG:  ON WOOD, YOUR HONOR?

9          THE COURT:  YEAH, ON WOOD.

10          MR. WEISBERG:  YES, THAT'S CORRECT.

11          THE COURT:  WELL, IN YOUR ANSWER, AGAIN, THERE IS

12    OBJECTIONS TO THE FACT THAT IT'S A CONTENTION INTERROGATORY,

13    BUT ON THE OTHER HAND THIS IS NOT INAPPROPRIATE TO BE

14    ANSWERED EITHER NOW OR AT SOME POINT IN THE NEAR FUTURE AND

15    YOU INDICATE THAT YOUR INVESTIGATION IS ON GOING.

16          ARE WE NOT ABLE TO ANSWER THAT FROM WHAT RECORDS

17    YOU HAVE?

18          MR. ORTIZ:  WELL, THE WOOD CASE, YOUR HONOR,

19    THE -- THE NOTES THAT WE HAVE GO TO WHEN THE CALLS WERE

20    MADE, NOT THE CONTENT.

21          ALL RIGHT.  SO, WHAT THE QUESTION HERE IS, DID

22    WE -- DID MY CLIENT LEAVE VOICE MAIL MESSAGES?  I DON'T KNOW

23    THE ANSWER -- MY CLIENT DOESN'T KNOW THE ANSWER TO THAT

24    QUESTION RIGHT NOW, BECAUSE THAT INFORMATION IS IN WELLS

25    FARGO'S POSSESSION.

```
1              I SHOULD NOTE, YOUR HONOR, THAT, AGAIN,
2   MR. WEISBERG HAS RECORDINGS.  SO, IN PART, I THINK HE CAN
3   ANSWER HIS OWN QUESTION.
4              MR. WEISBERG:  YOUR HONOR, THIS DISCOVERY WAS
5   SERVED THE BEGINNING OF DECEMBER.  I DON'T KNOW -- IF THEY
6   DON'T KNOW THE ANSWER NOW, WHEN -- I MEAN, WHEN ARE THEY
7   SUPPOSED TO KNOW THE ANSWERS TO THE QUESTIONS?
8              THE COURT:  YEAH.  I THINK, YOU KNOW, THERE'S --
9   WE ARE SORT OF MIXING APPLES AND ORANGES HERE BECAUSE YOU
10  KEEP TALKING ABOUT ALL THE DOCUMENTARY EVIDENCE OR DATA THAT
11  MIGHT BE IN EXISTENCE BEING WITH WELLS FARGO.
12             BUT, YOU KNOW, THERE IS SOME OBLIGATION ON THE
13  DEFENDANT'S PART TO CONDUCT AN INVESTIGATION OF ITS
14  ACTIVITIES AND TO BE ABLE TO ANSWER THESE QUESTIONS.
15             I DON'T THINK YOU CAN HIDE BEHIND THE FACT ON
16  EVERY INQUIRY THAT THE -- WELL, THE DOCUMENTS ARE IN
17  POSSESSION OF WELLS FARGO.  I MEAN, THAT'S A FAIR QUESTION
18  IT SEEMS TO ME.
19             MR. ORTIZ:  WELL, YOUR HONOR, EXCUSE ME, PLEASE.
20  WE'RE NOT -- MY CLIENT ISN'T HIDING BEHIND ANYTHING, YOUR
21  HONOR.  I MEAN, THIS IS SIMPLY A SITUATION WHERE I AGREE
22  WITH THE COURT THAT THERE IS AN OBLIGATION ON MY CLIENT'S
23  PERSPECTIVE TO CONDUCT AN INVESTIGATION, BUT I THINK IT'S
24  ALSO -- ITS OBLIGATION IS WITHIN THE -- THE INFORMATION THAT
25  THEY HAVE WITHIN THEIR CUSTODY AND CONTROL.  AND THIS IS NOT
```

```
 1    A SITUATION WHERE THEY HAVE THAT.

 2            AND MY CLIENT WILL CONTINUE TO MAKE EFFORTS WITH

 3    WELLS FARGO TO BE ABLE TO OBTAIN THAT INFORMATION.

 4            THE COURT:  ON THE -- LET'S GO OVER TO THE ELLIOT

 5    MATTER WHERE THE INQUIRY IS A LITTLE BIT DIFFERENT.

 6            DID DEFENDANT MAKE INITIAL CONTACT WITH PLAINTIFF

 7    VIA TELEPHONE CALL ON MAY 5, 2010, AND THEN PROCEED DURING

 8    THE SUBSEQUENT 30-DAY PERIOD TO THREATEN WITH FURTHER

 9    ACTION?

10            AGAIN, I THINK IT'S A FAIR INQUIRY.  IT MAY

11    REQUIRE SOME INVESTIGATION ON YOUR PART BEFORE YOU SHOULD BE

12    REQUIRED TO ANSWER, BUT, YOU KNOW, YOUR OBJECTIONS OTHERWISE

13    WOULD JUST KIND OF FALL ON DEAF EARS.

14            MR. ORTIZ:  WELL -- AND I UNDERSTAND THAT, YOUR

15    HONOR.  I THINK WITH THE SUPPLEMENTATION OR I THINK WITH THE

16    ACCOUNT NOTES THAT WE HAVE PRODUCED, THAT ANSWER HAS BEEN --

17    THAT QUESTION HAS BEEN ANSWERED.

18            MR. WEISBERG:  I --

19            MR. ORTIZ:  THE NOTES -- THE NOTES HERE SAY WHAT

20    WAS SAID DURING WHAT DATES AND WHETHER THERE WAS A,

21    QUOTE/UNQUOTE, THREAT MADE FOR FURTHER ACTION.  I MEAN, THE

22    NOTES ARE QUITE SPECIFIC.

23            THE COURT:  THEY DO SPEAK FOR THEMSELVES.  I HAVE

24    NO QUESTION --

25            MR. WEISBERG:  NO, ABSOLUTELY NOT.
```

1        THE COURT:  HOWEVER -- HOWEVER, IF YOU WANT TO

2   ANSWER A INTERROGATORY RESPONSE BY REFERENCE TO SOME

3   PRODUCTION THAT'S BEEN MADE, YOU HAVE GOT TO BE SPECIFIC

4   ABOUT IT.

5        MR. ORTIZ:  OKAY, YOUR HONOR.

6        THE COURT:  HERE WE'VE GOT AN OBJECTED TO

7   INTERROGATORY AND THEN, SUBSEQUENT THERETO, 400 PAGES BEING

8   DELIVERED, WHICH I -- IF I'M HEARING PROPERLY WERE NOT TIED

9   INTO IN ANY WAY PARTICULAR INTERROGATORIES OR BEING

10  RESPONSIVE TO ANY PARTICULAR INTERROGATORIES.

11       SO, YOU KNOW, FRANKLY FROM MY STANDPOINT, THE

12  INTERROGATORY HASN'T BEEN FAIRLY RESPONDED TO.  IT MAY IN

13  FACT -- THE INFORMATION MAY IN FACT BE WITH THE PLAINTIFF,

14  BUT IT'S NOT -- THIS INTERROGATORY ISN'T APPROPRIATELY

15  RESPONDED TO.

16       MR. ORTIZ:  AND I UNDERSTAND THAT, YOUR HONOR.

17  AND JUST TO CLARIFY, YOUR HONOR, WHAT'S AT ISSUE RIGHT NOW

18  IS NOT 400 PAGES WORTH OF DOCUMENTS, BUT THE ACCOUNT NOTES,

19  WHICH ARE EIGHT PAGES, YOUR HONOR.  EIGHT.

20       AND IF MR. WEISBERG -- AND THEY ARE DETAILED BY

21  DATE.  SO, IF MR. WEISBERG IS REFERENCING THE CALL ON MAY

22  5TH, I'M LOOKING AT THE NOTES RIGHT NOW, YOUR HONOR, HE --

23  ALL HE WOULD NEED TO DO IS GO TO PAGE FOUR AND SEE WHAT WAS

24  SAID DURING THAT CONVERSATION.

25       MR. WEISBERG:  THE PROBLEM, YOUR HONOR, YOU CAN'T

1   EVEN TELL FROM THE DOCUMENT WHICH OF THESE ARE PHONE CALLS.

2   THERE IS ALL KINDS OF CODES AND EVERYTHING THAT GC USES,

3   THEIR INTERNAL CODES.  I DON'T KNOW WHAT ANY OF THIS MEANS.

4          EVERY ONE OF THESE ENTRIES DON'T REFER TO

5   TELEPHONE CALLS, I KNOW THAT FROM MY EXPERIENCE.  SO,

6   THERE'S OTHER THINGS GOING ON HERE.  I DON'T KNOW WHAT THE

7   ABBREVIATIONS MEAN, THE CODE MEANS, I DON'T KNOW WHAT THAT

8   MEANS.  I THINK WE ARE ENTITLED TO AN ACTUAL ANSWER TO THEIR

9   QUESTION.

10         MR. ORTIZ:  LET ME DO THIS TO MAKE THE COURT'S JOB

11  EASIER, YOUR HONOR.  I WILL SUPPLEMENT THIS INTERROGATORY

12  CONSISTENT WITH THE RECORDS TO ANSWER MR. WEISBERG'S

13  QUESTION.

14         ALL RIGHT.  TO ME, MY UNDERSTANDING WAS THAT

15  THE -- AND, BY THE WAY, MR. WEISBERG'S FIRM HAS SUED MY

16  CLIENT NUMEROUS TIMES, SO TO TAKE THE POSITION THAT HE'S NOT

17  FAMILIAR WITH THEIR ABBREVIATIONS, I DON'T THINK IS -- I

18  THINK IS A BIT DISINGENUOUS.

19         BUT, IN ANY EVENT, YOUR HONOR, TO MAKE THE COURT'S

20  JOB EASIER, WE WILL SUPPLEMENT OUR RESPONSE CONSISTENT WITH

21  THE NOTES TO POINT OUT WHAT OCCURRED.

22         THE COURT:  WELL, YOU'RE GOING TO END UP

23  SUPPLEMENTING YOUR RESPONSES IN MORE WAYS THAN ONE, SO WHY

24  DON'T YOU JUST WAIT UNTIL YOU GET TO MY ORDER.

25         THE -- I WILL FOLLOW THIS UP WITH AN ORDER THAT

```
1     BASICALLY SETS OUT IN GENERAL TERMS WHAT I THINK WE NEED TO

2     DO HERE.

3              WITH REGARDS TO WOOD, I'M ACCEPTING COUNSEL'S

4     REPRESENTATION THAT THE DOCUMENTS ARE IN THE POSSESSION OF

5     WELLS FARGO, BUT I'M GOING TO REQUIRE THAT THAT FACT BE

6     CERTIFIED AND ALSO CERTIFY THAT COUNSEL HAS CHECKED AGAIN

7     AND THAT ALL DOCUMENTS RELATED TO THE WOOD MATTER HAVE, IN

8     FACT, BEEN PRODUCED AND ARE OTHERWISE NOW WITH WELLS FARGO

9     SO THAT WE HAVE GOT SOME CERTIFICATION OF THAT TO FALL BACK

10    ON IF, IN FACT, THAT DEVELOPS NOT TO BE THE CASE.

11             FOR THE PLAINTIFF, I THINK A NUMBER OF THESE ARE

12    ADEQUATELY ANSWERED AT THIS POINT.  AND THEN I THINK,

13    FRANKLY, THERE ARE SOME THAT ARE NOT.

14             I THINK THESE CONTENTION INTERROGATORIES NEED TO

15    BE ANSWERED.  I MAY ALLOW FOR SOME EXTENDED PERIOD OF TIME

16    BEFORE THEY HAVE TO ANSWER THEM SPECIFICALLY.  BUT I AGREE

17    WITH YOU, I THINK THEY'RE FAIR QUESTIONS, THEY SHOULD BE

18    RESPONDED, SO THE ORDER WILL ADDRESS THOSE AS WELL.

19             NOW THAT WE HAVE GOT A PROTECTIVE ORDER IN PLACE

20    WE HAVE SOME DOCUMENTS IN PLACE.  WHAT'S THE NEXT STEP FOR

21    DISCOVERY?  THERE'S A MOTION THAT'S NOT YET RIPE FOR A 30B6

22    DEPO IN FLORIDA.

23             MR. WEISBERG:  RIGHT.  WE'LL BE FILING THE SAME

24    THING IN THE ELLIOT CASE, I WOULD IMAGINE, YOUR HONOR.

25             THE COURT:  OKAY.  I THINK WE HAVE ONLY SEEN ONE
```

1    OF THOSE MOTIONS.

2          MR. WEISBERG:  YES.

3          THE COURT:  THAT'S AN ISSUE, BUT WHAT ELSE IS

4    COMING IN TERMS OF DISCOVERY?  WHAT OTHER DISCOVERY IS

5    PLAINTIFF PLANNING -- EITHER PLAINTIFF PLANNING ON THIS?

6          MR. WEISBERG:  THAT'S IT, YOUR HONOR.  OTHER THAN

7    GETTING THESE WRITTEN DISCOVERY RESPONSES, WE'LL BE DEPOSING

8    THEIR REPRESENTATIVES AND THAT'S ALL THAT WE INTEND TO DO IN

9    TERMS OF DISCOVERY.

10         THE COURT:  DO YOU -- IS IT YOUR PRACTICE TO

11   DEPOSE THE INDIVIDUALS THAT MAKE THE CALLS?

12         MR. WEISBERG:  YOU KNOW, IT HONESTLY DEPENDS ON

13   WHAT THE REPRESENTATIVES SAY.  I MEAN, IT DEPENDS ON, YOU

14   KNOW, WHETHER THERE'S CASES THAT INVOLVE SPECIFIC THREATS

15   MADE; FOR EXAMPLE, FOR WOOD; THEY'RE PROBABLY NOT GOING TO

16   BE NECESSARY.

17         FOR ELLIOT, IF THERE ARE SPECIFIC THREATS THAT MY

18   CLIENT SAYS WERE MADE, THREATS TO REPORT THE DEBT TO THE

19   CREDIT BUREAUS BY A SPECIFIC COLLECTOR, THEN THAT MIGHT BE

20   THE CASE, BUT, YOU KNOW, IT ALL DEPENDS ON THE CASE.

21         I WOULD SAY PROBABLY NOT IN WOOD, POSSIBLY ONE OR

22   TWO IN ELLIOT, YOUR HONOR.

23         THE COURT:  OKAY.  FROM DEFENDANT'S STANDPOINT,

24   MR. ORTIZ, MR. SICKLES, WHAT DO YOU NORMALLY ANTICIPATE

25   DOING IN THESE MATTERS?

1          MR. ORTIZ:  WELL, YOUR HONOR, WHAT WE HAVE BEEN

2    TRYING TO DO FROM THE OUTSET IS RESOLVE BOTH OF THESE CASES.

3    AND CONSISTENT WITH OUR -- WITH OUR -- WITH MY -- I SHOULD

4    SAY MY, NOT MR. SICKLES, MY FAILED ATTEMPTS TO BE ABLE TO

5    RESOLVE THIS CASE WITH MR. WEISBERG, WE HAVE A MEDIATION

6    SCHEDULED IN BOTH OF THESE CASES FOR JUNE 20TH WHERE WE'LL

7    CONTINUE TO MAKE OUR EFFORTS TO RESOLVE THE CASE IN GOOD

8    FAITH.

9          WE HAVE RIGHT NOW CURRENTLY OUT WRITTEN DISCOVERY

10   REQUESTS IN THE ELLIOT CASE.  AND I BELIEVE THAT MR. SICKLES

11   HAS MADE A REQUEST TO MR. WEISBERG TO MAKE HIS CLIENT

12   AVAILABLE ON JUNE 28TH FOR THE DEPOSITION SHOULD THE ELLIOT

13   CASE NOT SETTLE.

14         IN WOOD, WE WOULD ANTICIPATE THAT IF WE'RE UNABLE

15   TO RESOLVE THE CASE THAT WE WOULD BE SERVING WRITTEN

16   DISCOVERY FOLLOWED UP BY A DEPOSITION SHORTLY THEREAFTER.

17         THE COURT:  ALL RIGHT.  YOU -- THE DISPUTE ON THE

18   30B6 DEPOSITION IS SIMPLY WHERE WE CONDUCT THE DEPOSITION?

19         MR. WEISBERG:  YES, YOUR HONOR.

20         MR. ORTIZ:  AND, YOUR HONOR, THERE IS PLENTY OF

21   INFORMATION THAT -- THERE IS A LOT OF INFORMATION THAT WE'RE

22   PREPARING TO SUPPLY TO THE COURT AS TO WHY MR. WEISBERG'S

23   MOTION SHOULD BE DENIED.

24         MOST IMPORTANTLY IS THE FACT THAT CONSISTENT WITH

25   THE LEBLAC (PH) DECISION, WHICH I BELIEVE YOUR HONOR WROTE,

1    IS THAT THE GC SERVICES CORPORATE REPRESENTATIVES RESIDES IN

2    HOUSTON, TEXAS.  HOUSTON, TEXAS IS PRINCIPAL PLACE OF

3    BUSINESS FOR GC SERVICES.

4           AND IT SHOULD ALSO BE NOTED THAT MR. WEISBERG'S

5    FIRM HAS AN OFFICE THERE IN HOUSTON.  SO, TO TAKE THE

6    POSITION THAT IT WOULD BE UNDULY BURDENSOME FOR HIM TO HAVE

7    TO FLY OUT OR TAKE THIS DEPOSITION, YOU KNOW, WHEN HE HAS AN

8    OFFICE THERE IN HOUSTON IS A BIT TROUBLING.

9           WE SHOULD ALSO NOTE TO THE COURT --

10          MR. WEISBERG:  FIRST OF ALL, YOUR HONOR, WE DON'T

11   HAVE AN OFFICE IN HOUSTON.  TALK ABOUT BEING DISINGENUOUS.

12   MY OFFICE DOES NOT HAVE AN OFFICE IN HOUSTON.  THAT'S

13   INCORRECT.  I DON'T KNOW IF WE'RE GOING TO ARGUE THAT MOTION

14   NOW OR WHAT.

15          MR. ORTIZ:  AND FOR WHAT IT'S WORTH, YOUR HONOR,

16   WE'LL BE PROVIDING THAT INFORMATION IN THE WRITTEN RESPONSE,

17   YOUR HONOR.  FOR WHAT IT'S WORTH, JUST SO THAT THE COURT IS

18   WELL AWARE OF THE FACT, BECAUSE MR. WEISBERG DID NOT PROVIDE

19   THE COURT WITH A COMPLETE RECORD OF THE WRITTEN

20   CORRESPONDENCE THAT WAS GOING BACK AND FORTH, IS THAT WE

21   OFFERED TO MAKE THE CORPORATE REPRESENTATIVE AVAILABLE BOTH

22   TELEPHONICALLY AND BY VIDEO CONFERENCING.

23          NEITHER ONE OF THOSE TWO OPTIONS WERE GOOD ENOUGH

24   FOR MR. WEISBERG.

25          THE COURT:  ALL RIGHT.  WELL HERE IS THE DEAL.

1   WE'LL AWAIT YOUR RESPONSE BEFORE WE RULE ON THE MATTER.

2            AND AS YOU POINT OUT, I FRANKLY DON'T HAVE A

3   BRIGHT LINE RULE ON THIS TYPE OF DISPUTE.

4            I THINK THERE ARE CASES IN WHICH IT MAKES SENSE

5   THAT THE PARTIES TRAVEL TO THE WITNESS IN THESE 30B6

6   DEPOSITIONS, ESPECIALLY IN CASES WHERE PERHAPS THEY ARE

7   DOCUMENT INTENSIVE, WHERE ALL THE DOCUMENTS ARE GOING TO BE

8   SITUATED IN A FOREIGN LOCALE.

9            SOMETIMES, FRANKLY, IT'S SEEMS TO BE MORE

10  EFFICIENT AND MORE LIKELY TO PRODUCE A COMPLETE DEPOSITION

11  BY MAKING THE LAWYERS TRAVEL TO THE WITNESS AS OPPOSED TO

12  MAKE THE WITNESS TRAVEL TO THE MIDDLE DISTRICT OF FLORIDA.

13           I'M FULLY AWARE OF THE LOCAL RULE THAT ANTICIPATES

14  THAT THEY -- SHOULD ANTICIPATE A DEPOSITION WITHIN THE

15  MIDDLE DISTRICT, BUT SOMETIMES, FRANKLY, IT'S JUST -- IT

16  SEEMS TO ME TO BE MORE PRUDENT TO MAKE THE LAWYERS TRAVEL AS

17  OPPOSED TO HAVING THE WITNESS TRAVEL BECAUSE IT RESULTS IN A

18  BETTER PRODUCTION, A BETTER DEPOSITION, BUT WE'LL WAIT AND

19  SEE WHAT YOUR RESPONSE IS BEFORE WE RULE ON THAT.

20           ANYTHING ELSE PENDING THAT I'M NOT AWARE OF?

21           MR. WEISBERG:  I DON'T BELIEVE SO, YOUR HONOR.

22           THE COURT:  OKAY.

23           MR. ORTIZ:  YOUR HONOR, I WOULD JUST -- I WOULD

24  SIMPLY ASK, TO THE EXTENT THAT I HEARD MR. WEISBERG

25  CORRECTLY, I THINK HE SAID THAT HE'S BRINGING THE SAME

```
 1   MOTION IN THE ELLIOT CASE, AND I WOULD JUST ASK THE COURT
 2   FOR PURPOSES OF JUDICIAL ECONOMY, I THINK IT WOULD MAKE MOST
 3   SENSE TO HAVE HIM HOLD OFF ON FILING THAT MOTION UNTIL THIS
 4   ISSUE IN WOOD IS DECIDED BECAUSE I CAN'T SEE HOW THE COURT
 5   WOULD DECIDE ONE WAY IN WOOD AND DIFFERENTLY IN ELLIOT.  I
 6   MEAN, IT'S THE SAME ISSUE.
 7            THE COURT:  WELL, FRANKLY, AS FAR AS I'M
 8   CONCERNED, IF MR. WEISBERG WANTS TO SAY THAT HE ADOPTS THE
 9   SAME MOTION FOR WHICHEVER CASE WASN'T FILED, THAT'S FINE
10   WITH ME AND WE CAN SIMPLY ADDRESS IT AS SUCH, UNLESS THERE
11   IS SOME REASON TO FILE A SEPARATE MOTION THERE.
12            MR. WEISBERG:  NO, THAT WILL BE FINE.
13            THE COURT:  ALL RIGHT.  SO, IN YOUR RESPONSE,
14   MR. ORTIZ, ASSUME THAT YOU ARE ADDRESSING BOTH PLAINTIFFS.
15            MR. ORTIZ:  OKAY, YOUR HONOR, I WILL.  I ONLY HAVE
16   TO FILE A RESPONSE IN THE WOOD CASE, THOUGH, IS THAT
17   CORRECT?
18            THE COURT:  YEAH, BUT ADDRESSING BOTH.
19            MR. WEISBERG:  I'M SORRY, YOUR HONOR.  DID YOU
20   WANT ME TO FILE SOMETHING THEN IN THE ELLIOT CASE SAYING I'M
21   ADOPTING THE MOTION IN THE WOOD CASE?
22            THE COURT:  NO, YOU JUST DID.  YOU JUST DID.
23   WE'LL NOTE THAT YOU HAVE ADOPTED --
24            MR. WEISBERG:  OKAY.
25            THE COURT:  -- THAT MOTION.  AND YOUR RESPONSE --
```

1    YOU CAN SIMPLY FILE A SINGLE RESPONSE, BUT IT NEEDS TO BE

2    ADDRESSED IN BOTH CASES.

3              MR. WEISBERG:  ALL RIGHT.

4              THE COURT:  OKAY.  WE'LL GET AN ORDER OUT HERE

5    SOME TIME IN THE NEXT SEVERAL DAYS.

6              THANK YOU VERY MUCH.

7              MR. WEISBERG:  THANK YOU, YOUR HONOR.

8              MR. ORTIZ:  THANK YOU.

9              (HEARING CONCLUDED.  )

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **C E R T I F I C A T E**

2          I, HOWARD W. JONES, CERTIFY THAT THE FOREGOING IS
   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
3  IN THE ABOVE-ENTITLED MATTER.

4

5                              /S *HOWARD W. JONES*

6                              _____
                               HOWARD W. JONES, RPR
                               OFFICIAL COURT REPORTER
7                              UNITED STATES DISTRICT COURT
                               MIDDLE DISTRICT OF FLORIDA
8                              TAMPA DIVISION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25